380 A.2d 425

**COMMONWEALTH of Pennsylvania**

v.

**Antonio FUCCI, Jr. a/k/a Carmen, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1976.

Decided Dec. 2, 1977.

Gary Neil Asteak, Easton, for appellant.

Alan B. McFall, Assistant District Attorney, and John E. Gallagher, District Attorney, Easton, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

The instant appeal arises from appellant's conviction, after a jury trial of theft by deception. Crimes Code, 18 Pa.C.S. § 3922 (1973). The offense occurred when appellant, Tony (Carmen) Fucci, and his paramour, Glenda Volkert, sold baking soda to an undercover State Police officer after representing the substance to be heroin. Appellant alleges that the Commonwealth failed to prove he intended to defraud the officer. Appellant also contends that he is entitled to a new trial because the trial court refused to

charge the jury on entrapment and on the adverse inference the jury could draw from the Commonwealth's failure to produce another eyewitness, its paid informant. Finally, appellant maintains that certain identification testimony by the State Police officer should have been suppressed. We agree with the court below that these arguments have no merit.

In the afternoon of October 8, 1974, Steven Carroll, a paid police informant, entered the Wardell Hotel in Phillipsburg, New Jersey and struck up a conversation with a waitress there, Glenda Volkert. According to Ms. Volkert,[1] Carroll persistently pleaded with her to get him some drugs, or put him in touch with someone who could. Although, according to her testimony, she had stated repeatedly that she could not get drugs for him, she finally agreed to meet Carroll at 6:30 P. M. at a pizzeria near her home in Easton, Pennsylvania. She said she would bring her friend "Carmen" (or "Tony"; appellant was known by both names, and the testimony concerning the name used varies).

In the meantime, Carroll telephoned undercover narcotics officer Francis Karvan, informed him of the impending deal, and arranged to accompany him to the pizzeria. Promptly at 6:30 P. M. Ms. Volkert and a man Trooper Karvan positively identified as appellant appeared. The group then removed to a nearby alley where amenities and introductions were exchanged, Ms. Volkert introducing appellant as "Carmen." The bogus drug transaction then began when Ms. Volkert, at Carmen's instruction, removed an aluminum foil-wrapped package from her purse. The package, containing a glassine bag filled with a white powder, was examined by Trooper Karvan. Appellant stated that it was good "smack" (heroin), and that he had used some earlier in the day and was still a "little high" from it. Karvan then paid appellant $120 and the parties separated. Subsequent chemical analysis revealed that the white powder was simply

---

1. Carroll was not called to testify so Ms. Volkert's testimony in this regard was uncontradicted, though self-serving. She was charged as an accomplice.

baking soda. Three months later, when an extensive under-cover narcotics investigation in the region terminated, appellant and Ms. Volkert were arrested.

■ Appellant's first allegation of error, that there was insufficient proof of intent to defraud, is simply not substantiated by the facts. Although Ms. Volkert claimed that appellant was not the man with her during the transaction, she also testified that she had informed the man who accompanied her that the substance in the packet was baking soda and that the transaction was a trick. It is well settled that the jury is entitled to believe some, all or none of a witness' testimony. See, e. g., *Commonwealth v. Palmer*, 448 Pa. 282, 292 A.2d 921 (1972); *Commonwealth v. Dawkins*, 227 Pa.Super. 558, 322 A.2d 715 (1974). In the instant case, the jury was entitled to believe both Trooper Karvan's testimony that Ms. Volkert's accomplice was appellant and Ms. Volkert's testimony that her accomplice had been informed prior to its sale that the content of the package/was baking soda. Cf. *Commonwealth v. Branch*, 239 Pa.Super. 17, 361 A.2d 435 (1976). Hence, the evidence sufficiently demonstrated that appellant knowingly and intentionally committed theft by deception when he sold the baking soda having represented it to be heroin. Crimes Code, 18 Pa.C.S. § 302(b)(1) (1973); *Commonwealth v. Mitchell*, 234 Pa.Super. 21, 335 A.2d 521 (1975).

■ Appellant's next allegation of error, that he was entitled to a charge on the defense of entrapment, is also spurious. The Crimes Code, 18 Pa.C.S. § 313 (1973) defines entrapment, in pertinent part, as follows:

"A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purposes of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by  .   .   . :

employing methods of persuasion or inducement which create a substantial risk that *such an offense* will be committed by persons other than those who are ready to commit it." [Emphasis added.]

In the first place, if Steven Carroll's entreaties to Ms. Volkert could be construed as entrapment, they would be entrapment to sell a Controlled Substance, not to commit theft by deception. Appellant merely attempted to take advantage of Carroll's ostensible need for narcotics to defraud Trooper Karvan. In that sense this case is akin to those where we have held that police conduct simply afforded the accused an opportunity to commit the crime charged. *Commonwealth v. Wright*, 235 Pa.Super. 289, 340 A.2d 544 (1975). In addition, Carroll's efforts to instigate a sale were directed to Ms. Volkert alone; until the sale took place, Carroll had not spoken to appellant. Hence, there is no significant nexus between Carroll's alleged conduct and appellant's sale of the baking soda to Trooper Karvan. For either of the foregoing reasons, appellant was not entitled to a charge on entrapment.

▪ Appellant next contends that he was entitled to a charge that the jury could infer from Carroll's absence at trial that any testimony he might have offered would have been unfavorable to the Commonwealth. Specifically, appellant contends that Carroll might have undermined Trooper Karvan's identification testimony.[2] However, the Commonwealth is not required to call every witness to a crime, and need not do so as long as there is no attempt to withhold evidence favorable to the accused. *Commonwealth ex rel. Sprangle v. Maroney*, 423 Pa. 589, 592, 225 A.2d 236 (1967). In the instant case, Trooper Karvan explained that he had no knowledge of the whereabouts of Steven Carroll, except that Carroll had called him once since appellant's arrest from a pay telephone in Ohio. In addition, Trooper Kar-

2. Appellant also argues that Carroll might have corroborated his entrapment defense. Because we have found that appellant had not demonstrated entrapment, Carroll's absence did not damage appellant's defense in this respect.

van's identification testimony of appellant was exceedingly strong and sure, including his descriptive testimony of a small tatoo on appellant's hand between his thumb and index finger. Given the additional circumstance that appellant and Ms. Volkert were paramours, and that Ms. Volkert's attempt to exculpate her lover at trial was patently and thoroughly incredible,[3] the court did not commit reversible error in refusing to give the requested charge. *Commonwealth v. Smith*, 227 Pa.Super. 355, 373–74, 324 A.2d 483 (1974). Furthermore, since Carroll was, apparently, not within the jurisdiction of the courts of Pennsylvania, he was not peculiarly within the reach and knowledge of the Commonwealth. Compare *Commonwealth v. Wright*, 444 Pa. 536, 540, 282 A.2d 323 (1971).

Appellant argues lastly that the court should have suppressed identification testimony concerning Trooper Karvan's seeing appellant and Ms. Volkert at the police station on the day of their arrest. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Again, we disagree. The confrontation in question was inadvertent; Trooper Karvan had just returned from making other arrests when he saw appellant in the police station, recognized him, and spoke briefly to him. The meeting was not contrived, and the jury was fully apprised of the circumstances surrounding it. In any event, in light of the overwhelming direct and circumstantial evidence of appellant's guilt, any error in alluding to this chance meeting was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Judgment of sentence is affirmed.

JACOBS and SPAETH, JJ., concur in the result.

**3.** Appellant had a prior record of drug use and criminal conduct, while Ms. Volkert had no criminal record. As a result, she was admitted to ARD, whereas appellant was given a prison sentence.