396 A.2d 724

**COMMONWEALTH of Pennsylvania**

v.

**Willie LEE, Jr., a/k/a, William Lee, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1977.

Decided Dec. 29, 1978.

Lois B. Anderson, Assistant Public Defender, Reading, for appellant.

J. Michael Morrissey, District Attorney, Reading, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Following a jury trial commenced on July 20, 1976, appellant was convicted of promoting prostitution.[1] Post-verdict motions were denied, and appellant was sentenced to a prison term of three to seven years, fined a sum of $500.00, and ordered to pay the costs of prosecution. Appellant now contends that a new trial is necessitated by the failure of the court below to charge the jury on entrapment. We find no merit in such an argument, and affirm the judgment of sentence.

The pertinent facts are simple. The Reading Police Vice Squad secured the assistance of an auxiliary policewoman, Ms. Donna Bendel, to act as a decoy in their investigations. She was instructed to stand in the area of Seventh and Chestnut Streets in the City of Reading, a section known to have a high incidence of crime. Both parties agree that she is an attractive woman, and her attire on the day in question included a pair of long pants, a white turtleneck sweater and a green T-shirt. Ms. Bendel's orders were to say nothing until approached, and then merely to reply "What do you mean" if propositioned.

On March 26, 1976, appellant drove by the decoy, parked his car, and walked back to where she was standing. He then stated that she could earn more money by not walking the streets. She replied, "What do you mean," and he retorted that she could make more by turning tricks at the Mushroom Plant. She again responded, "What do you mean," and appellant argued that the career he proposed would be better than standing on a corner. Ms. Bendel then gave a signal to the police officers observing the scene, who apprehended appellant after a brief chase and arrested him.

1. 18 Pa.C.S. § 5902(b)(3).

The defense of entrapment has been codified in Section 313 of the Crimes Code, which states in pertinent part:

"(a) General rule.—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it."

18 Pa.C.S. § 313.

*See also Commonwealth v. Fucci*, 251 Pa.Super. 156, 380 A.2d 425 (1977); *Commonwealth v. Proietto*, 241 Pa.Super. 385, 361 A.2d 712 (1976); *Commonwealth v. Mott*, 234 Pa.Super. 52, 334 A.2d 771 (1975).

■ The defense is available, however, and a jury charge is necessary, only if there is evidence that the defendant was not disposed to commit the crime and that the police conduct was likely to entrap the innocently disposed defendant. *Commonwealth v. Loccisano*, 243 Pa.Super. 522, 366 A.2d 276 (1976); *Commonwealth v. Proietto, supra; Commonwealth v. Berrigan*, 234 Pa.Super. 370, 343 A.2d 355 (1975). Thus, artifice and strategem are legitimate tactics that may be employed by law enforcement officials to detect and combat crime. Merely affording opportunities or facilities for the commission of a crime by one who already had the criminal intent to engage in such a crime does not defeat the prosecution. *Commonwealth v. Fucci, supra; Commonwealth v. Clawson*, 250 Pa.Super. 422, 378 A.2d 1008 (1977); *Commonwealth v. Wright*, 235 Pa.Super. 289, 340 A.2d 544 (1975); *Commonwealth v. Klein*, 222 Pa.Super. 409, 294 A.2d 815 (1972).

■ In the instant case, there is no evidence that the police action constituted a method of persuasion that created a substantial risk that persons not otherwise ready to commit the crime would do so. This is not a situation as was presented in *Commonwealth v. Clawson, supra.* In *Clawson*, a police informant asked the defendant if he could get a pound of marijuana for an acquaintance. The informant was a friend of the defendant and the latter said he would check on the availability of the drug. Subsequently, the defendant received $170 from the informant, procured the marijuana, and turned it over to the informant. The defendant had never been a drug dealer, did not make a profit on the deal, and testified that he delivered the marijuana only because the informant was a friend. The defendant was convicted of delivery of marijuana, but this court subsequently reversed the judgment of sentence and remanded for a new trial as a result of the failure to give instructions on entrapment.

Unlike *Clawson*, however, the decoy was here instructed not to initiate conversation with any potential customer, nor to speak at all, save for the non-committal "What do you mean". She did not quote prices or suggest locations for the proposed work; actions which might conceivably be construed as inducing the crime. Rather, she merely stood silently and allowed appellant to approach her.

There is nothing reprehensible about this procedure, and its use has been sanctioned in other jurisdictions. *See, e. g., Williams v. United States*, 342 A.2d 367 (D.C.1975) (no entrapment found in a conviction for solicitation of prostitution when female police decoy said nothing and defendant broached terms for the "trick"); *State v. Wilson*, 41 Wis.2d 29, 162 N.W.2d 605 (1968) (no entrapment when non-uniformed male officer sat in car and was approached by a female who asked him if he wanted a girl and quoted terms for her work). If, as appellant contends, the ploy was infirm because of the decoy's positioning in a high crime area, the police would be restricted from using efficacious methods of detection precisely in those areas in which crime control is

most imperative. To adopt appellant's argument would lead to just such an absurd result.

The judgment of sentence is therefore affirmed.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.