648 A.2d 761

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Curtis A. LIGHTFOOT, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 9, 1994.

Decided Oct. 7, 1994.

James B. Gefsky, Greensburg, for appellant.

John J. Driscoll, Dist. Atty., James M. Fox, Robert P. Boyer, Asst. Dist. Attys., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

ZAPPALA, Justice.

The question presented in this appeal is whether the trial court committed reversible error in refusing to charge the jury on the defense of entrapment. Our examination of the entire record persuades us that the court did so err, and thus we vacate the judgment of sentence and remand for new trial. 428 Pa.Super. 638, 627 A2d 203.

Curtis Lightfoot was charged with possession of a controlled substance, possession with intent to deliver a controlled substance, delivery of a controlled substance, and criminal conspiracy. The Commonwealth's evidence consisted of the testimony of two Westmoreland County detectives, Terrence Kuhns and Anthony Marcocci, who encountered Lightfoot on October 9, 1988, while working as undercover narcotics agents with an informant in the Monessen area.

Detective Kuhns testified that the informant advised him that Lightfoot would be at a certain bar in Monessen and would probably be able to obtain drugs for him. Kuhns and Marcocci went to the bar and there met the informant and Lightfoot. After a brief conversation, Kuhns had a discussion with Lightfoot about purchasing "double dutch", a mixture of heroin and cocaine. Lightfoot indicated that he could obtain the drugs for thirty dollars a bag, plus a "tariff" for his services in obtaining the drugs. Kuhns gave Lightfoot one hundred twenty five dollars and Lightfoot left the bar in the informant's car. Sometime later, a woman named Sharon Norfleet entered the bar and indicated to Kuhns and Marcocci that they should accompany her outside. Lightfoot was waiting in the car. After the detectives entered the car, Lightfoot gave them several packets of drugs. He indicated that he had needed Norfleet's help to obtain the drugs.

Lightfoot, testifying in his own defense, admitted that he possessed the drugs and ultimately delivered them to Kuhns, but presented a radically different version of the events. According to Lightfoot, he was acquainted with the informant

as a fellow drug user, but he had never engaged in selling drugs to her or anyone else. On the night in question the informant called him, picked him up in her car, and drove him to the bar in Monessen. He indicated to her that he had not had any heroin that day and was "sick" with withdrawal symptoms.

At the bar, the informant indicated that she had some cousins who were trying to get some drugs, and that if Lightfoot could obtain the drugs for them he would be able to get fifty dollars for himself to get whatever drugs he needed. She then introduced Lightfoot to Kuhns, who said he was interested in buying some drugs. Thereafter the informant gave Lightfoot one hundred twenty five dollars from Kuhns for this purpose. Moreover the informant told Lightfoot to take her car and advised him where he could obtain the drugs. After taking the car to Clairton and obtaining some drugs, Lightfoot happened upon Sharon Norfleet and offered her a ride. They returned to the bar, where Lightfoot gave Kuhns the drugs, after which the informant drove Lightfoot and Norfleet back to Lightfoot's home.

Prior to closing arguments, defense counsel requested that the court's charge to the jury include an instruction on the defense of entrapment. The court refused the request, stating as follows:

Let me say this. I'm not going to give you an entrapment charge. I have already decided that because I don't think, in this case, there's been a preponderance of evidence at all that shows an otherwise law abiding citizen would be enduced [sic] or persuaded to commit a criminal act by a law enforcement officer or any person acting in cooperation with a law enforcement officer.

But that doesn't mean you can't make arguments of that nature to the jury. You might want to say—You might not want to say the Judge is going to tell you this or that, but I'm not precluding you from making an argument that the predisposition was on the part of the informant because that's who you are going after here and that's clear from your questioning. You're entitled to make that argument,

but I'm not giving an entrapment instruction because I don't
think it's been established....

Notes of Testimony, pp. 162–163. The court expounded on its
reasoning in its opinion, stating,

[a] jury charge on the issue of entrapment is necessary only
when there is evidence that the defendant was not disposed
to commit a crime and that police conduct was likely to
entrap an innocent defendant. *Commonwealth v. Lee,* [262
Pa.Super. 218, 396 A.2d 724 (1978)]. Since Defendant
presented no evidence of police misconduct, no instruction
on entrapment was necessary.

Opinion at 4.

The defense of entrapment is set out at 18 Pa.C.S. § 313:

(a) **General rule.**—A public law enforcement official or a
person acting in cooperation with such an official perpe-
trates an entrapment if for the purpose of obtaining evi-
dence of the commission of an offense, he induces or encour-
ages another person to engage in conduct constituting an
offense by either:

(1) making knowingly false representations designed to
induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement
which create a substantial risk that such an offense will
be committed by persons other than those who are ready
to commit it.

(b) **Burden of proof.**—Except as provided in subsection
(c) of this section, a person prosecuted for an offense shall
be acquitted if he proves by a preponderance of the evi-
dence that his conduct occurred in response to an entrap-
ment.

(c) **Exception.**—The defense afforded by this section is
unavailable when causing or threatening bodily injury is an
element of the offense charged and the prosecution is based
on conduct causing or threatening such injury to a person
other than the person perpetrating the entrapment.

The general rule is that "[a] trial court may not refuse
to charge the jury on the elements of a defense, where the

defense is supported by evidence in the record.... Where there is evidence to support a claimed defense, it is 'for the trier of fact to pass upon that evidence and improper for the trial judge to exclude such consideration by refusing the charge.' " *Commonwealth v. Kyslinger*, 506 Pa. 132, 136, 484 A.2d 389, 391 (1984), quoting *Commonwealth v. Brown*, 491 Pa. 507, 512, 421 A.2d 660, 662 (1980).

We applied this rule in the context of the entrapment defense in *Commonwealth v. Weiskerger*, 520 Pa. 305, 554 A.2d 10 (1989). After holding that the statute establishes an objective standard "focus[ing] on the conduct of the police and [ ] not on the defendant's prior criminal activity or other indicia of a predisposition to commit crime," 520 Pa. at 311, 554 A.2d at 13, we rejected the Commonwealth's argument that no instruction on entrapment was required because the defendant had neither testified nor admitted participating in any elements of the crimes. We observed that

A defendant is entitled to an instruction on any recognized defense which has been requested, which has been made an issue in the case, and for which there exists evidence sufficient for a reasonable jury to find in his or her favor. *See Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328 (1983); Pa.R.Crim.P. Rule 1119. Moreover, the entrapment statute conditions the availability of the defense *only* on a defendant's ability to establish its elements. 18 Pa.C.S. § 313(b). Although it may be difficult for a factfinder to believe that a person who has denied any criminal wrongdoing was entrapped into doing a criminal act, the law of this Commonwealth does not bar a jury instruction on entrapment on the basis of a jury's potential incredulity.

520 Pa. at 312–313, 554 A.2d at 14 (emphasis in original).

More recently in *Commonwealth v. Borgella*, 531 Pa. 139, 611 A.2d 699 (1992), we analyzed the defendant's evidence regarding the events that resulted in his arrest according to an objective standard and determined that there was sufficient evidence to entitle him to a jury instruction on entrapment.

The defendant's testimony indicated that a police informant contacted him, gained his confidence through false pretenses, and made repeated requests that the defendant obtain drugs, which were refused until the informant linked the illegal activity to the possibility of a lucrative job with his "boss", in reality an undercover police officer.

In relying on *Commonwealth v. Lee*, and indicating that an entrapment instruction "is only necessary when there is evidence that the defendant was not disposed to commit a crime . . .," Opinion at 4, the trial court clearly failed to follow *Weiskerger*.[1] The court further erred in concluding that Lightfoot "presented no evidence of police misconduct." Opinion at 4.

Lightfoot's testimony indicated that the informant contacted him by phone, picked him up in her car and drove him to a bar, introduced him to undercover officers whom she identified as her cousins, advised him that he could make money to satisfy his own drug addiction by obtaining drugs for the officers, provided him with a car and then directed him to a source where he could obtain the drugs, all while being aware that Lightfoot was experiencing withdrawal symptoms which could be relieved if he could get drugs for himself. This testimony was sufficient to create an issue of fact as to whether the informant improperly induced Lightfoot to buy drugs for Detective Kuhns.[2] As Judge Wieand observed in

1. Justice McDermott's concurring opinion in *Weiskerger* referred to *Lee* as a "notable exception" to Superior Court's application of the objective analysis of the entrapment defense. See 520 Pa. at 322, n. 5, 554 A.2d at 19, n. 5.

2. The Dissenting Opinion, while making reference to "the evidence provided by Appellant and his witness," hardly reviews that evidence in the light most favorable to Appellant, as it purports to do, Dissenting Opinion at 765. Though the Appellant admitted that he was a drug *user*, he testified that he had never before *sold* drugs either to the informant or to anyone else. This alone, if taken in the light most favorable to the Appellant, is evidence sufficient to raise the question of predisposition in accordance with the objective standard. It matters not that a jury might ultimately reject the Appellant's argument, and conclude, as does the Dissenting Opinion, that "Appellant was ready and willing to commit these crimes because he wanted money to purchase and use controlled substances for which he himself was

dissent below, it is "particularly perplex[ing] that the trial court believed there to be sufficient evidence to permit a defense argument of entrapment but insufficient evidence to warrant a jury instruction thereon."

The order of the Superior Court is reversed. Judgment of sentence is vacated and the case is remanded to the court of common pleas for a new trial.

NIX, C.J., concurs in the result.

CASTILLE, J., files a Dissenting Opinion in which FLAHERTY and PAPADAKOS, JJ., join.

MONTEMURO, J., is sitting by designation.

CASTILLE, Justice, dissenting.

The issue before this Court is whether the trial court erred by refusing to give an entrapment instruction to the jury. Our entrapment statute provides, in pertinent part:

(a) **General rule.**—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by:

\*　\*　\*　\*　\*　\*

or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons *other than those who are ready to commit it.*

\*　\*　\*　\*　\*　\*

18 Pa.C.S. § 313 (emphasis added). The majority focuses only upon the introductory language of section (a) without analysis of subsection (2), which would require an entrapment instruc-

responsible in creating his own need," *id.* at 766–767. *The question here is not whether this Court believes the Appellant's version but whether the Appellant was entitled to have the jury instructed as to the law of entrapment when deliberating on the evidence.*

tion in this case only if Appellant presented evidence that would allow a reasonable juror to conclude that the police employed methods of persuasion and inducement that created a substantial risk that the drug offense would be committed by a person other than a person ready to commit it. A review of the evidence, in the light most favorable to Appellant, reveals that Appellant failed to establish a prima facie case of entrapment; therefore, no instruction was warranted.

Here, the evidence provided by Appellant and his witness Sharon Norfleet, reveals that a confidential informant, with whom Appellant had previously shared heroin, contacted him *once* during a nine month period requesting that he purchase some cocaine for her.[1] (T.T. at 88, 92). Appellant testified that he met the confidential informant at a bar, where he agreed to buy the illegal substance for the confidential informant because he was experiencing heroin withdrawal and needed money to purchase more illegal drugs for himself. Shortly after receiving "front money" from the confidential informant, he proceeded to a known drug area, where he had previously purchased illegal drugs (T.T. at 124–129), and purchased the requested contraband for the confidential informant. He also purchased heroin for himself. (T.T. at 130–133). While he was there, he met another user of illegal substances and before returning the cocaine to the confidential informant, he stopped to share his drugs with the other user. (T.T. at 141–143). Nothing in the record indicates that the detectives employed methods that would overwhelm persons who would not otherwise commit this crime. To the extent Appellant was induced to commit his crimes, he was induced only by his own physical need to obtain money to purchase

1. The majority implies that Appellant only agreed to buy the illegal drugs for the confidential informant because of the confidential informant's unyielding persistence in her requests for drugs. I submit that this is belied by Appellant's own testimony set forth above. The majority also bases its decision upon what it characterizes as the confidential informant's exploitation of her friendship with Appellant. This characterization also finds no support. As discussed previously Appellant testified that the confidential informant made only a single request for drugs in a nine month period, and that he did not know the confidential informant very well or for a long period of time. (T.T. at 84, 88).

more illegal substances for his own use and *not* by improper police conduct.

As noted by Justice Frankfurter's concurring opinion in *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), from which the present codification of the entrapment defense finds its origin:[2]

> [The defense of entrapment] does not mean that the police may not act so as to detect those engaged in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation. It does mean that in holding out inducements they should act in such a manner as is likely to induce to the commission of crime only these persons and not others who would normally avoid crime....

356 U.S. at 383–84, 78 S.Ct. at 826–27. Appellant was ready and willing to commit these crimes because he wanted money to purchase and use controlled substances for which he himself was responsible in creating his own need. Therefore, as a matter of law, I would find that Appellant failed to establish prima facie evidence of the elements of the defense of entrapment so as to bar any instruction. The majority's holding to the contrary suggests that the mere request by a police officer, or by a confidential informant acting at the behest of the police, to purchase illegal substances warrants an entrapment instruction. I do not believe this to be the case. Therefore, I would find that the trial court did not abuse its discretion and properly refused the requested entrapment instruction.

The police conduct leading up to Appellant's possession and delivery of the illegal substance in question hardly amounts to the persistent conduct of the informant in *Commonwealth v. Borgella*, 531 Pa. 139, 611, A.2d 699 (1992), upon which the majority relies. Indeed, the majority's reliance upon *Borgella* is misplaced. In *Borgella*, this Court found sufficient evidence warranting an entrapment instruction where the defendant testified that months prior to the charged incident, the confi-

---

**2.** *Commonwealth v. Weiskerger*, 520 Pa. 305, 311, 554 A.2d 10, 13 (1989), *citing with approval, Commonwealth v. Jones*, 242 Pa.Super. 303, 363 A.2d 1281 (1976).

dential informant appeared as a stranger at defendant's home asking to use his bathroom. The informant used the bathroom and then asked the defendant to obtain drugs for him, which the defendant refused to do. The informant subsequently returned to the defendant's home several times over the several months prior to the charged incident, seeking drugs and seeking to develop a relationship which would induce the defendant to commit a drug offense. The informant also attempted to play on Borgella's sympathy by masquerading as an addict with domestic problems who was unable to obtain drugs himself because each time he tried he was "ripped off" or beaten. However, Borgella persisted in his refusal to purchase illegal drugs for the informant. As the two became social friends, Borgella became enviable of the informant's income and became interested in employment by the informant's "boss". Per Borgella's testimony, he had been led to believe the informant was employed in the area of construction.

The informant agreed to the introduction and drove Borgella from his home to meet his "boss" in a parking lot to discuss a potential job in construction for Borgella. Police testified that at this meeting Borgella sold them drugs. However, Borgella testified that he did not. The issue before the Court in *Borgella* was whether an entrapment instruction was warranted where the accused denied any criminal wrongdoing. Here, unlike *Borgella,* we have a seasoned drug veteran who admitted he purchased and delivered the contraband and admitted he agreed to partake in the drug transaction in order to perpetuate his own drug use.

Appellant failed to demonstrate a prima facie case that entrapment occurred under these facts. No entrapment instruction was therefore required. To hold otherwise under these flimsy set of facts will do irreparable harm to future law enforcement efforts to control the deadly flow of illicit drugs in our society. I would respectfully affirm the Superior Court's order affirming Appellant's judgment of sentence.

FLAHERTY and PAPADAKOS, JJ., join this dissenting opinion.