J-S19008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES E. STYLES | |
| Appellant | No. 876 EDA 2014 |

Appeal from the PCRA Order entered March 6, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0014913-2009

BEFORE:  STABILE, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                      **FILED MAY 20, 2015**

Appellant, James Styles, is serving a prison sentence for his conviction of firearms offenses.  He appeals from an order denying relief under the PCRA.[1]  On appeal, he argues the PCRA court erred in denying a new trial based on after-discovered evidence and ineffective assistance of counsel. We affirm in part, vacate in part, and remand.

> At trial, the Commonwealth presented the testimony of Philadelphia Police Officer Javier Montanez.  On October 2, 2009, at approximately 10:15 p.m., Officer Montanez was on patrol in the area of 29th and Flora Streets, in the [C]ity and [C]ounty of Philadelphia, Pennsylvania.  While driving southbound on 29th Street, he observed a crowd of approximately twenty-five (25) people on the corner of 29th and Flora Street[s], standing outside a bar called "Sarah's Place."

---

[1] Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-46.

Officer Montanez saw Appellant standing "at the lower step of the bar," pointing a silver handgun at a group of females about twenty (20) feet away. Officer Montanez witnessed Appellant fire the gun "toward the waistline and leg area of the females." The officer testified that he heard the gunshot, and saw a "muzzle flash."

After the gunshot, Officer Montanez immediately parked and exited his patrol car with his gun drawn. By this time, a crowd of people w[as] chaotically running toward him. Among this crowd was Appellant, who was "speed walking" in the officer's direction as though "not acknowledging that [the [O]fficer] actually saw him discharge the firearm at the females." Officer Montanez ordered Appellant to the ground, "placed [his] knee . . . on [Appellant's] waistline," reached into Appellant's right waistband, and recovered the gun. The firearm was loaded with six live rounds in its magazine and one round in the chamber.[1] After placing Appellant under arrest, Officer Montanez recovered a spent shell casing outside the bar, at the same location from which Appellant fired the gun. Forensic evidence established that the gun had discharged this shell casing.[2]

[1] The parties stipulated that the certified record, from the Pennsylvania State Police, states that Appellant had no license to carry a firearm on October 2, 2009.

[2] The Commonwealth presented the testimony of Gamilia Marshal, who is a Firearms Examiner for the Philadelphia Police Department. Appellant stipulated that Ms. Marshal is qualified as an expert in "firearms identification," and she testified "to a reasonable degree of scientific certainty" that the shell casing was discharged from the gun recovered from Appellant.

Officer Montanez further testified that the three females, at whom he saw Appellant shoot, ran up to him and screamed: "[h]e just shot at me. He just shot at me." These females were Precious Leverette, Shakea Johnston, and Thomika Thomas.

Precious Leverette testified at trial.[3] She claim that she, her cousin (Thomika Thomas), and her friend (Shakea Johnston), together went to "Sarah's Place" on October 2, 2009. At some point in the evening[,] a fight broke out and the bar's owner, "Ms. Sarah,[] told everyone to leave . . . because there was too much complication in the bar." While the three females made their way to the exit, Appellant began "pushing [Ms. Thomas],

- 2 -

telling her [to] move, bitch, hurry up bitch." Upon hearing this, Ms. Leverette confronted Appellant, who "started pushing" her and calling her a bitch. When Ms. Leverette exited the bar, and after being pushed by Appellant "about four times," she "grabbed [Appellant] and threw him towards a black truck."

> [3] Ms. Leverette originally lied to police, telling them her name was Precious "Taylor." She claimed she had given this false name because she lives in the neighborhood where the incident occurred, and feared the consequences of cooperating with the police. She feared, in particular, being labeled a "snitch."

In response to being thrown against the truck, Appellant pulled a gun from his waistband, pointed it towards Ms. Leverette's feet, and fired. Ms. Leverette testified that the bullet missed her because Ms. Johnston had grabbed her from behind and pulled her away. After the gunshot, Ms. Leverette and her companions ran, "going zigzag" around cars because Ms. Leverette believed Appellant would shoot again.

Ms. Leverette's testimony differs in some respects from that of Officer Montanez. Officer Montanez testified that Appellant and Ms. Leverette testified they were "face to face." Officer Montanez further testified that he recovered the gun from Appellant's right waistband while Appellant was face-first on the ground, but Ms. Leverette testified that Appellant had placed the gun on the ground in compliance with the [O]fficer's orders. In other words, Ms. Leverette claimed that Officer Montanez did not recover the gun from Appellant's waistband.[4]

> [4] Furthermore, on cross-examination, Ms. Leverette testified she did not see Officer Montanez arrive until **after** the shot was fired. She also testified that she originally tried to flee the scene, but was stopped by police.

The defense presented the testimony of Ernestine Savage and Tujunana Burgess, both of whom claimed to have been at Sarah's Place at the time of the shooting. Ms. Savage testified that an argument broke out between Appellant and another female inside Sarah's Place, which culminated outside the bar. Looking outside the bar's front door, Ms. Savage saw "a lot of females surrounding [Appellant] . . . [.] They were on his back, like they were jumping him." Ms. Savage heard a gunshot during the brawl, but she did not see Appellant with a gun.[5]

- 3 -

[5] On cross-examination, Ms. Savage testified that she had known Appellant for approximately fifteen (15) years and that she is his "close friend." However, prior to trial, Ms. Savage never informed the police or "anyone" else that she had seen Appellant, her "close friend," being assaulted by a group of females just prior to his arrest.

Ms. Burgess, an "acquaintance" of Appellant who frequents Sarah's Place, likewise testified that an argument broke out inside the bar, during which Appellant asked a female patron "to leave his cousin's establishment because he didn't want know trouble in there." Although Ms. Burgess heard Appellant call the female a bitch, she never saw Appellant push or punch this individual. Rather, when Appellant stepped outside the bar, Ms. Burgess saw him talking to an unidentified male and "trying to apologize for calling the girls a bitch."

According to Ms. Burgess, when Appellant offered his apology, "[a] girl came up from behind and hit [him] in his head." "[T]hen another girl came, and it was like a free for all, it was a fight." While Appellant was under attack, still another "young lady," who "wasn't in the bar," pulled out a silver gun. Appellant "wrestled" this woman for the gun, and "the next thing [Ms. Burgess] knew . . . the gun went off."[6]

[6] Ms. Burgess testified in part: "[Appellant] thought quick. We all could have been dead out there. One of us could have been killed. I'm glad he got the gun from her. I really am. Similar to Ms. Savage, Ms. Burgess never bothered to inform the police that Appellant had disarmed a dangerous individual, and that they arrested the wrong person.

PCRA Court Opinion, 8/11/14, at 2-6 (internal record citation omitted) (emphasis in original).

Police charged Appellant with three counts of aggravated assault and recklessly endangering another person (REAP), and three violations of the

Uniform Firearms Act (VUFA).[2] The jury acquitted Appellant of aggravated assault and REAP, but convicted him of two of the VUFA charges (carrying without a license and carrying on a public street in Philadelphia). Immediately following the jury trial, the trial court held a bench trial, and convicted Appellant of persons not to possess firearms. The trial court sentenced Appellant to five to ten years in prison followed by five years of probation. This Court affirmed the judgment of sentence on direct appeal. *Commonwealth v. Styles*, 38 A.3d 908 (Pa. Super. 2011) (unpublished memorandum).

On March 2, 2012, Appellant filed *pro se* a timely first PCRA petition. The PCRA court appointed counsel, who filed an amended and supplemental petition. Over the Commonwealth's objection, the PCRA court held hearings on two days. The PCRA court later entered a final order denying Appellant's PCRA petition, and this appeal followed. Appellant filed a concise statement as ordered, and the PCRA court issued an opinion under Pa.R.A.P. 1925(a).

Appellant raises two questions for our review:

1. Where the defense trial theory was that Appellant had acted in self-defense, which the jury believed [in] finding him not guilty on the assault charges, was the after-discovered evidence that his main accuser had lied to the police, showing a consciousness of guilt and raising an inference that she was the initial possessor of the weapon, did the lower [c]ourt err

_____

[2] 18 Pa.C.S.A. §§ 2702, 2705, 6105 (persons not to possess firearms), 6106 (firearms not to be carried without a license), and 6108 (carrying firearms on public streets or property in Philadelphia), respectively.

in finding that this newly discovered evidence, (which showed that Appellant lawfully possessed the weapon and was not guilty of the weapon's [sic] possession offenses) was not sufficient to grant a new trial?

2. Where Appellant was found guilty of weapons possession charges and the defense was that he had taken the weapon from another person who was attacking him, was [trial c]ounsel ineffective for failing to seek a duress instruction pursuant to 18 Pa.C.S. § 309 which would have justified his possession of the handgun and led to a not guilty verdict on the weapons charges?

Appellant's Brief at 2.[3]

Most PCRA appeals involve mixed questions of fact and law. **Commonwealth v. Pitts**, 981 A.2d 875, 878 (Pa. 2009). Accordingly, we defer to the PCRA court's factual findings and credibility determinations that are supported by the record. **Commonwealth v. Medina**, 92 A.3d 1210, 1214 (Pa. Super.) (*en banc*), *appeal granted on other grounds*, 105 A.3d 658 (Pa. 2014). We review *de novo*, however, the PCRA court's legal conclusions. **Id.** "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." **Commonwealth v. Freeland**, 106 A.3d 768, 775 (Pa. Super. 2014) (quoting **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014)). Stated succinctly, we may reverse only if the PCRA

_____

[3] Appellant has abandoned his third claim that trial counsel was ineffective for failing to challenge the weight of the evidence.

court's factual findings are unsupported, or its legal conclusions are erroneous. ***Id.***

First, Appellant contends he should receive a new trial based on after-discovered evidence. He argues that Precious Leverette's attempt to conceal her identity reflects consciousness of guilt because it was actually her handgun that Appellant took to keep her from shooting anyone. Appellant points further to Leverette's use of the surname Taylor 30 days after trial, when she was arrested for an armed robbery.[4]

The PCRA allows relief if a petitioner shows by a preponderance of the evidence, "[t]he **unavailability at the time of trial** of exculpatory evidence that has **subsequently become available** and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi) (emphasis added). An after-discovered evidence claim has four components: the evidence (1) was discovered after trial and could not have been obtained earlier through reasonable due diligence; (2) is not corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) will likely cause a different verdict at a retrial. ***Commonwealth v. Chamberlain***, 30 A.3d 381, 414 (Pa. 2011). The test

---

[4] Leverette eventually pled guilty to robbery by threatening immediate serious bodily injury and criminal conspiracy at Docket No. CP-51-CR-0010776-2010. That docket lists the offense date as June 29, 2010, several weeks after Appellant's June 2, 2010 trial.

is conjunctive, *i.e.*, a PCRA petitioner must meet all elements, or the claim fails. ***Commonwealth v. Foreman***, 55 A.3d 532, 537 (Pa. Super. 2012).

The distinguishing feature of after-discovered evidence is that it exists at the time of trial, but is not discovered until afterward. Here, Appellant knew of Precious Leverette's sur-nominal duplicity **at trial**. While testifying, Leverette admitted to giving police a false name. Indeed, in his brief, Appellant quotes Leverette's trial testimony, in which she admitted to "switching" her last name. ***See*** Appellant's Brief at 16-17 (quoting N.T. Trial, 6/2/10, at 116-17). Moreover, Leverette's use of an alias when she was arrested for armed robbery—which occurred **after** Appellant's trial— cannot be after discovered evidence. After-discovered evidence is exculpatory evidence that the defendant does not know exists at the time of trial. Leverette's use of a false name **several weeks after trial** cannot be after-discovered evidence because that fact did not exist at the time of trial.

The evidence supporting Appellant's claim is not actually after-discovered evidence. Because Appellant must meet all four elements of the test for after-discovered evidence and he cannot, we need not address the other three elements. The PCRA court, therefore, did not err in rejecting Appellant's first claim.

Second, Appellant argues his trial counsel rendered ineffective assistance in not presenting a duress defense. He contends trial counsel should have argued to the jury and requested an instruction on duress,

because Appellant was forced to take the handgun from Precious Leverette so that she did not shoot anyone.

The PCRA also allows relief where a petitioner proves by a preponderance ineffective assistance of counsel that so undermined the truth-determining process that no reliable adjudication of guilt could have taken place. 42 Pa.C.S.A. § 9543(a)(2)(ii). "[C]ounsel is presumed effective, and in order to overcome this presumption, an appellant must establish (1) that the underlying claim has arguable merit; (2) that counsel had no reasonable basis for his action or inaction; and (3) that the appellant has been prejudiced by counsel's ineffectiveness." **Commonwealth v. Jones**, 951 A.2d 294, 302 (Pa. 2008). Like the test for after-discovered evidence, the test for ineffective assistance of counsel is cumulative, and failure to establish one of the three prongs is fatal to the claim. **See id.**

The Crimes Code defines duress as follows:

**(a) General rule.--**It is a defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

**(b) Exception.--**The defense provided by subsection (a) of this section is unavailable if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress. The defense is also unavailable if he was negligent in placing himself in such a situation, whenever negligence suffices to establish culpability for the offense charged.

18 Pa.C.S.A. § 309.  Section 309 (as opposed to the narrower common-law test) is the proper test to determine whether the evidence supports a duress defense.  *Commonwealth v. DeMarco*, 809 A.2d 256, 261 (Pa. 2002).

> [T]o establish [duress], there must be evidence that: (1) there was a use of, or threat to use, unlawful force against the defendant or another person; and (2) the use of, or threat to use, unlawful force was of such a nature that a person of reasonable firmness in the defendant's situation would have been unable to resist it.

*Id.* at 261-62.  A defendant does not need to show that the force threatened is of "present and impending death or serious bodily injury."[5]  *Id.* at 262.

_____

[5] In its brief, the Commonwealth sets forth the test for duress as follows:

> The elements of duress are: (1) the immediate or imminent threat of death or serious bodily injury; (2) a well-grounded or reasonable fear that the threat will be carried out; and (3) there is no reasonable opportunity to escape the threatened harm except by committing the criminal act.

Appellee's Brief at 12-13 (citing *Commonwealth v. Hilburn*, 746 A.2d 1146, 1148 (Pa. Super. 2000), and *Commonwealth v. Baskerville*, 681 A.2d 195, 200-01 (Pa. Super. 1996)).  This three-part test, however, is the common-law test for duress superseded by 18 Pa.C.S.A. § 309:

> As noted above, both lower courts in the instant case applied a stringent three-part test in determining whether the evidence was sufficient to support the duress defense.  **We conclude, however, that the three-part test applied by the lower courts is the wrong test for determining whether the evidence supports the duress defense**.  That test was the one followed at common law, which governed the law of duress prior to the enactment of 18 Pa.C.S. § 309 in 1972.  *See United States v. Anthony*, 145 F. Supp. 323, 339-40 (M.D. Pa. 1956) (citing common law rule); *see also Commonwealth v. Schwartz*, 285 A.2d 154, 157 (Pa. 1971) (citing common law rule as law governing duress in Pennsylvania); 10 P.L.E. Criminal

*(Footnote Continued Next Page)*

─────────

> Law § 42 (1972) (same). When the General Assembly enacted Section 309, however, it abrogated the common law test, finding that it was too difficult for defendants to meet. ***See*** 18 Pa.C.S. § 309, cmt. (1972) (standard set forth in Section 309 liberalizes existing law which provides that the coercion must be immediate and induce a well-grounded fear of death or serious bodily injury); ***see also*** 18 Pa.C.S. § 105 cmt. (1972) (code "carefully defines crimes and defenses rather than leaving their definition to several centuries of common law"). Moreover, since the enactment of Section 309, this Court has repeatedly recognized that the test for determining whether the evidence supports the duress defense is the one set forth in the statute, rather than the common law test followed below. ***See Commonwealth v. Pelzer***, 612 A.2d 407, 413-14 (Pa. 1992) [(Flaherty, J, Opinion in Support of Affirmance)]; ***Commonwealth v. Kyslinger***, 484 A.2d 389, 390-91 (Pa. 1984); ***Commonwealth v. Smith***, 416 A.2d 986, 988 (Pa. 1980); ***Commonwealth v. Santiago***, 340 A.2d 440, 446 (Pa. 1975); ***see also***[] Pa. SSJI (Crim.) § 3.09. Accordingly, the trial court in the instant case committed an error of law by using the abrogated common law test to determine whether the evidence supported the duress defense here.

***DeMarco***, 809 A.2d at 261 (parallel citations omitted) (footnoted omitted) (emphasis added).

As such, ***Hilburn*** and ***Baskerville*** are of questionable validity. In fact, the root authority cited by ***Hilburn*** and ***Baskerville***, is ***Commonwealth v. Morningwake***, 595 A.2d 158, 164 (Pa. Super. 1991). In ***Morningwake***, this Court applied the common-law duress test and held that duress was not a defense to murder. ***Id.*** at 164. However, we did not acknowledge 18 Pa.C.S.A. § 309, and cited no Pennsylvania authority in support. Indeed, the sole authority cited, *Corpus Juris Secundum*, now recognizes that Pennsylvania does not follow the common law regarding duress. ***See*** 22 C.J.S. *Criminal Law* § 59 (2006 & Supp. 2014). Moreover, in ***DeMarco***, our Supreme Court "expressly disagreed" with the use of the common law test for duress. ***DeMarco***, 809 A.2d at 261 n.7. Finally, in ***Commonwealth v. Markman***, 916 A.2d 586, 607 & n.16 (Pa. 2007), the Supreme Court held that duress is available as a defense to murder, thus abrogating ***Morningwake***'s second holding.

"A defendant is entitled to an instruction on any recognized defense which has been requested, which has been made an issue in the case, and for which there exists evidence sufficient for a reasonable jury to find in his or her favor." *Commonwealth v. Lightfoot*, 648 A.2d 761, 764 (Pa. 1994) (Opinion Announcing the Judgment of the Court) (quoting *Commonwealth v. Weiskerger*, 554 A.2d 10, 14 (Pa. 1989)). "Where a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record." *DeMarco*, 809 A.2d at 261. Thus, a trial court abuses its discretion if it refuses to give a requested instruction on any defense supported by the evidence. *See, e.g., id.* (duress); *Lightfoot*, 648 A.2d at 764-65 (entrapment); *Commonwealth v. Willis*, 553 A.2d 959, 962 (Pa. 1989) (alibi). If the record contains evidence supporting the defense, "**it is for the trier of fact to pass upon that evidence** and improper for the trial judge to exclude such consideration by refusing the charge." *DeMarco*, 809 A.2d at 261 (emphasis added). Inconsistencies in testimony and the credibility of witnesses are not valid reasons to refuse to give a jury instruction on duress. These items indicate only "that the jury might have disbelieved [a defendant's] duress testimony." *Markman*, 916 A.2d at 610 n.18. "[A]n instruction on a defense is not barred on the basis of a jury's potential disbelief." *Id.* Regarding a defendant's actions in placing himself in a situation where he might be subject to duress,

it is the **trier of fact** that must determine whether the defendant acted recklessly. Thus, an appellate court will only affirm a trial judge's removal of the duress issue from the jury on the basis of the recklessness exception where there can be no reasonable dispute that this exception applies.

*Id.* 608 (emphasis in original) (citing ***DeMarco***, 809 A.2d at 262). In other words, a trial court should refuse to instruct on duress only where the evidence forecloses it as a matter of law. ***See id.*** at 609-10.

We agree with Appellant that his claim has arguable merit.[6] At trial, Savage testified that some females began fighting inside the bar, that Appellant asked them to leave, and that five to six females "jump[ed]," punched, and kicked Appellant in the street. N.T. Trial, 6/2/10, at 134, 138-41. Burgess testified that Appellant asked a woman who caused a "commotion" inside the bar to leave. ***Id.*** at 148. She said that when Appellant was outside, a woman punched him in the back of his head. ***Id.*** at 149. A fight broke out, and Burgess saw a woman pull a gun, Appellant and the woman "tussl[ed]," and the gun went off. ***Id.*** at 149-50. Appellant's evidence—if believed—shows he was accosted by an armed Leverette, and took the firearm in a struggle to prevent her from shooting him or anyone

_____

[6] We reject, however, the conclusions Appellant reaches from the jury's acquittal of aggravated assault and REAP. Appellant attempts to argue that the jury's partial acquittal shows it found Officer Montanez's and Precious Leverette's testimony not credible, and that Appellant did not deliberately fire the weapon into a crowd. Appellant's Brief at 22, 27. Contrary to Appellant's argument, "[a partial] acquittal cannot be interpreted as a specific finding in relation to some of the evidence." ***Commonwealth v. Carter***, 282 A.2d 375, 376 (Pa. 1971).

else. Based on that evidence, trial counsel could have argued that Leverette, armed with a handgun, threatened Appellant; Appellant reasonably feared for his safety; and Leverette's threat was of such a nature that a person of reasonable firmness in the defendant's situation would have been unable to resist it. That is, trial counsel could have argued that Appellant possessed the firearm under duress, and requested jury instruction on duress.

To reject Appellant's claim, the PCRA court improperly weighed the evidence. The PCRA court posited that Appellant could have taken the gun from Leverette, or thrown it onto a rooftop instead of firing the weapon. Whether Appellant could have taken another course of action relevant to duress is for the fact-finder to resolve. The Commonwealth points to evidence that Appellant possessed the firearm prior to discharging toward a crowd of people. However, the record also contains evidence that Appellant wrestled away the firearm from Leverette. Although it is possible to disbelieve the evidence supporting duress, determination of the credibility and weight of the evidence are for the jury to decide. Where the defendant puts forward evidence to support a duress defense, a trial court cannot refuse to instruct the jury based on its determination that the evidence is not credible. *See Markman*, 916 A.2d at 607-08 (concluding trial court erred in refusing instruction on duress where defendant testified that her co-defendant battered her and threatened her with a knife if she did not participate in kidnapping and murder).

Additionally, the record contains conflicting evidence as to whether Appellant recklessly placed himself into a situation where he would probably be under duress. The Commonwealth's witnesses testified that Appellant initiated the confrontation, while Appellant's witnesses testified that a woman and her companions did so. The PCRA court accepted as true evidence that Appellant was the initial aggressor. *See* PCRA Court Opinion, 8/11/14, at 10 ("Arguably, the defense of duress was not even available to Appellant given his behavior in physically pushing and shoving Ms. Thompson and Ms. Leverette, and addressing each of them as 'bitch'."). "Notably, it is the **trier of fact** that must determine whether the defendant acted recklessly." *Markman*, 916 A.2d at 608 (emphasis in original). Therefore, the trier of fact should have determined whether Appellant was indeed the initial aggressor, or whether Appellant's witnesses credibly testified that the victims started the fight. *See id.* at 609 (concluding trial court erred in refusing duress instruction where record contained conflicting evidence on the issue of whether the defendant was reckless).

The Commonwealth's cited cases are not persuasive. As a general proposition, it is true that a trial court does not abuse its discretion in refusing an instruction unsupported by the evidence. *See Commonwealth v. Solano*, 906 A.2d 1180, 1190 (Pa. 2006) (holding trial court properly refused instruction on third-degree murder where evidence unequivocally established first-degree murder). In contrast, here Appellant placed evidence on the record at trial that—if believed—supported duress. Also,

*Commonwealth v. Pelzer*, 612 A.2d 407, 414 (Pa. 1992) (Flaherty, J, opinion in support of affirmance (OISA)),[7] is not persuasive, because it is distinguishable. In **Pelzer**, the evidence foreclosed duress as a matter of law: "[Pelzer's] own assertions defeated any claim of duress, and **there was no other evidence supporting the defense**, so it was proper for the trial court to refuse to charge the jury on duress." *Id.* at 414 (emphasis added). Here, the record contains conflicting evidence as to whether Appellant recklessly placed himself in a situation where he would likely be subject to duress.

We hold that Appellant's claim of ineffective assistance of counsel for failing to pursue a duress defense has arguable merit. We decline, however, to reverse outright the PCRA court's order. As Appellant concedes, the PCRA court did not address whether trial counsel had a reasonable basis for not

---

[7] It is questionable whether **Pelzer** is binding authority. In **Pelzer**, a capital case, the Supreme Court, with only six justices participating, unanimously affirmed Pelzer's conviction but split 3-3 regarding the death sentence. As a result, the court issued a *per curiam* order affirming the judgment of sentence. Justice Flaherty wrote an OISA, and Chief Justice Nix and Justice Zappala wrote opinions "in support of vacating sentence of death." Thus, the court voted unanimously to affirm the conviction, but Justice Flaherty's OISA represents the views of only three out of six participating justices. Though Chief Justice Nix and Justice Zappala joined in part the OISA's result (affirming the conviction), they did not explicitly join in the opinion or its reasoning. Therefore, it appears that the OISA is non-binding. *Cf.* **Commonwealth v. Holmes**, 79 A.3d 562, 575 (Pa. 2013) ("A decision of th[e Supreme] Court has binding effect if a majority of the participating Justices joined **the opinion**.") (emphasis added).

pursuing a duress defense. Appellant's Brief at 26-28. Nor did the PCRA court explicitly address prejudice resulting from any ineffectiveness. Without analysis of the factual record (including of trial counsel's testimony at the hearing) by the PCRA court, we cannot determine whether it erred in rejecting Appellant's claim of ineffective assistance of counsel. *Cf.* ***Commonwealth v. Montalvo***, No. 678 CAP, 2015 WL 1888580, at *10, 2015 Pa. LEXIS 894, at *27 (Pa. Apr. 27, 2015) (vacating and remanding to PCRA court for findings of fact, determinations of credibility, and legal conclusions, where PCRA court did not issue opinion, making appellate review impossible). Accordingly, we will vacate in part the PCRA court's order. On remand, the PCRA court must analyze whether Appellant meets the remaining prongs of the test for ineffective assistance of counsel (*i.e.*, counsel's basis for not pursuing a duress defense and resulting prejudice).[8] The PCRA court may request additional briefing from the parties, if needed.

In sum, we hold that Appellant's claim of after-discovered evidence is without merit and affirm that portion of the PCRA court's order rejecting it. We hold that Appellant's claim of ineffective assistance of counsel has arguable merit. Therefore, we vacate in part and remand to the PCRA court

---

[8] The PCRA court tried Appellant without a jury on the charge of persons not to possess firearms, *i.e.*, for that charge, it was the fact-finder. Its opinion appears to indicate that it disbelieved the evidence supporting duress. Any such disbelief may be relevant on remand to the PCRA court's prejudice analysis as to the persons not to possess conviction.

for additional findings regarding whether Appellant meets the other two prongs of the test for ineffective assistance of counsel.

Order affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/2015