J-A06032-18

2018 PA Super 150

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KAELIN THOMAS ANT WEBER, | |
| Appellant | No. 118 WDA 2017 |

Appeal from the Judgment of Sentence Entered December 19, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000456-2016

BEFORE:  BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

OPINION BY BENDER, P.J.E.:                        **FILED  JUNE 05, 2018**

Appellant, Kaelin Thomas Ant Weber, appeals from the judgment of sentence of 9-18 months' incarceration and a consecutive term of 3 years' probation, imposed following his conviction for fleeing or attempting to elude police (hereafter, "fleeing or eluding police"), 75 Pa.C.S. § 3733, and related summary offenses.  Appellant contends that the trial court erred when it precluded him from presenting evidence in support of an available statutory defense and, relatedly, that the court erred by refusing to instruct the jury on

_____

[*] Retired Senior Judge assigned to the Superior Court.

that defense.[1]  After careful review, we vacate Appellant's judgment of sentence and remand for a new trial.

Just before 10:00 a.m. on January 7, 2015, Officers Ryan Carr and Lawrence Huber of the Pittsburgh Bureau of Police observed Appellant's silver Lincoln travel through an intersection at a high rate of speed.  N.T., 5/4/18, at 36-37.  The uniformed officers were driving a marked police vehicle.  *Id.* They followed Appellant and, soon thereafter, observed that his vehicle's registration sticker had expired.  When Appellant stopped at an intersection, the officers "pulled up alongside the vehicle[,]" where Officer Carr was able to observe that its inspection and emission stickers were "valid[,]" but expired. *Id.* at 37.

Based on these observations, Officers Carr and Huber decided to conduct a traffic stop in order to "check for documents and ask why all the stuff was expired."  *Id.*  They activated their emergency lights and siren. Appellant eventually brought his vehicle to a stop in a parking lot.  *Id.* at 38. The officers exited their patrol car, and approached the silver Lincoln from behind.  *Id.*  Officer Huber approached the driver's side door to engage Appellant while Officer Carr approached the vehicle from the passenger side and "stayed at the rear back door of the vehicle looking in."  *Id.*

_____

[1] *See* 75 Pa.C.S. § 3733(c)(2)("It is a defense to prosecution under this section if the defendant can show by a preponderance of the evidence that the failure to stop immediately for a police officer's vehicle was based upon a good faith concern for personal safety.").

Officer Huber described his initial interaction with Appellant as follows:

I walked up to the vehicle, identified myself, said my name is Officer Huber with the Pittsburgh Police. The reason we're stopping you -- and I told him about the expired registration and expired inspection stickers. I asked him for his driver's license, registration and insurance card. He tells me he does not have a license in this country. I said, "What do you mean you don't have a license in this country?"

"I don't have a license in this country."

So I ask him for his name, date of birth, the last four of his Social Security, which he does provide. He provides me with name, date of birth, and Social Security number. Now I go back to my police vehicle at this point. I went to run the information to see if I could get anything back on him. Name comes back, date of birth comes back, in NCIC system when I run someone by name and date of birth with all your information, your Social Security number comes up. So I know this is who I'm talking to.

*Id.* at 66-67.

While Officer Huber ran Appellant's information, Officer Carr observed

Appellant

continuously reach[ing] from the front seat to the back seat, across the front seat, down underneath the seat where there were boxes. He was not still at all the entire time. So much so that as my partner was running the information, because there was so much movement in the vehicle, I asked him and he called for an additional unit to come and back us up.

*Id.* at 40.

After Officer Huber verified that Appellant did not have a Pennsylvania

Driver's License, he returned to speak to Appellant:

At that point as we approached the car, Officer Carr already told me about all of the movement going on. So as I approached the vehicle, I approached it with a little more caution at this point. As we go up, I'm starting to look at him and I notice a big bulge. He's wearing an open zippered flannel or light jacket. But it was

- 3 -

a hoodie sweatshirt. And I noticed this big bulge. And he kept reaching for it. That's why I kept telling him, "Quit reaching for that. Keep your hands where I can see them."

*Id.* at 68-69.

Appellant pulled out a pack of cigarettes from the vicinity of the bulge and threw them down. However, Officer Huber could still observe a bulge that he believed, based on his training and experience, to be consistent with the presence of a concealed firearm. *Id.* at 70. Officer Huber asked Appellant, "Do you have any weapons or anything in this vehicle that can harm me?" *Id.* Officer Huber recalled:

> When I asked that question, that is when he gets, like, called on the carpet, now he knew. He just started getting very agitated. Now he starts to appear more nervous that I'm asking him about what is in his waistband and I'm asking him specifically about a weapon.

*Id.* Appellant then told Officer Huber, "I don't like your tone. I feel very threatened." *Id.* at 80.

In response to this, as well as to Appellant's continued fidgeting, Officer Huber instructed him to keep his hands where he could see them. *Id.* at 71. Officer Huber also decided at that point to "open the vehicle and get [Appellant] out of the vehicle to gain control of him … to do a pat down." *Id.* He asked Appellant, "[f]or your safety as well as mine would you please step out of the vehicle?" *Id.* at 72.[2]

---

[2] Officer Huber maintained that he was not yelling, but instead spoke in a measured tone. *Id.* at 72. He also stated that did not have his firearm drawn when he asked Appellant to step out of his vehicle. *Id.*

As Officer Huber said this, he simultaneously attempted to open the front, driver's side door. *Id.* In response, Appellant put the vehicle in drive, stepped on the accelerator, and sped away. *Id.* Officers Huber and Carr quickly returned to their vehicle, activated their lights and siren, and began pursuit. *Id.* They observed Appellant cross four lanes of traffic, and then run a red light, "forcing people off the road." *Id.* at 73. The officers were having trouble keeping up with Appellant, despite reaching speeds during the pursuit of up to 60 m.p.h.,[3] in an area where the maximum speed limit was 25 m.p.h. *Id.* at 74. Soon after the chase began, however, the officers received an order from their shift supervisor to terminate the pursuit due to safety concerns. *Id.* at 73. Police later found Appellant's abandoned silver Lincoln. On June 23, 2015, more than five months after the incident, police peacefully arrested Appellant pursuant to a warrant. *Id.* at 90.

Appellant testified in his own defense at trial. His account largely corresponded with that of the officers; however, he stated that Officer Huber became increasingly "belligerent" as the encounter progressed. *Id.* at 114. He also testified that Officer Huber was punching or striking his driver's side window in the moment just before he fled. *Id.* at 116.

_____

[3] At the preliminary hearing, Officer Huber had testified that the maximum speed of the chase was "50 [m.p.h.] or so." *Id.* at 86.

The Commonwealth charged Appellant by criminal information with, at count 1, fleeing or eluding police, and also with numerous summary offenses (counts 2-7).[4] A mixed jury/bench trial convened on November 3, 2016. That same day, the jury returned a verdict of guilty as to count 1. The trial judge returned a verdict of guilty with respect to counts 2-7. On December 19, 2016, the trial court sentenced Appellant at count 1 to 9-18 months' incarceration, and a consecutive term of 3 years' probation. With respect to the summary offenses, the court ordered Appellant to pay several fines.

Appellant filed a timely notice of appeal, and then filed a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on June 6, 2017. Appellant now presents the following, two-part question for our review:

> I.     (a) Did the trial court commit reversible error by granting the Commonwealth's motion *in limine* and barring [Appellant] from presenting any testimony about his state of mind where such testimony would have [been] probative of an available statutory defense that was [his] burden to prove?
>
>      (b) Notwithstanding the excluded evidence of [Appellant]'s state of mind, did the trial court commit reversible error by failing to instruct the jury on the available sta[t]utory defense based on the existing evidence of record?

Appellant's Brief at 6 (unnecessary capitalization omitted).

---

[4] The Commonwealth charged Appellant with the following summary offenses: reckless driving, 75 Pa.C.S. § 3736; driving without a license, 75 Pa.C.S. § 1501(a); traffic control signals, 75 Pa.C.S. § 3112; failure to drive on right side of the road, 75 Pa.C.S. § 3301; operating a vehicle without valid inspection, 75 Pa.C.S. § 4703(a); and evidence of emission inspection, 75 Pa.C.S. § 4706(c)(5).

Appellant's related claims concern the trial court's refusal to allow Appellant to present a defense pursuant to 75 Pa.C.S. § 3733(c)(2) (hereinafter, the "personal safety defense" and/or "statutory defense").

> The Constitution guarantees to state criminal defendants "a meaningful opportunity to present a complete defense." ***Crane v. Kentucky***, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986) (internal quotation marks omitted). Hence, "[w]here a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record," [***Commonwealth v.***] ***DeMarco***, 570 Pa. [263,] 271, 809 A.2d [256,] 261 [(2002)]; it is "for the trier of fact to pass upon that evidence and improper for the trial judge to exclude such consideration by refusing the charge." ***Commonwealth v. Lightfoot***, 538 Pa. 350, 355, 648 A.2d 761, 764 (1994) (internal quotation marks omitted); ***see also Commonwealth v. Borgella***, 531 Pa. 139, 142, 611 A.2d 699, 700 (1992) ("A defendant is entitled to an instruction on any recognized defense which has been requested, which has been made an issue in the case, and for which there exists evidence sufficient for a reasonable jury to find in his or her favor."); ***Commonwealth v. Weiskerger***, 520 Pa. 305, 312–13, 554 A.2d 10, 14 (1989) (same).

***Commonwealth v. Markman***, 916 A.2d 586, 607 (Pa. 2007).

Moreover:

> "The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion." ***Commonwealth v. Cunningham***, 805 A.2d 566, 572 (Pa. Super. 2002), *appeal denied*, 573 Pa. 663, 820 A.2d 703 (2003). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Cameron***, 780 A.2d 688, 692 (Pa. Super. 2001).

***Commonwealth v. Dent***, 837 A.2d 571, 577 (Pa. Super. 2003).

The offense of fleeing or eluding police is defined by statute as follows: "Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense." 75 Pa.C.S. § 3733(a). Section 3733(c)(2) provides that:

> It is a defense to prosecution under this section if the defendant can show by a preponderance of the evidence that the failure to stop immediately for a police officer's vehicle was based upon a good faith concern for personal safety. In determining whether the defendant has met this burden, the court may consider the following factors:
>
> > (i) The time and location of the event.
> >
> > (ii) The type of police vehicle used by the police officer.
> >
> > (iii) The defendant's conduct while being followed by the police officer.
> >
> > (iv) Whether the defendant stopped at the first available reasonably lighted or populated area.
> >
> > (v) Any other factor considered relevant by the court.

75 Pa.C.S. § 3733(c)(2).

Initially, we note that this is a case of first impression. The statutory defense in question was added by amendment to the fleeing or eluding police statute nearly two decades ago, in 2001. *See* 2001 Pennsylvania Legislative Service Act No. 2001-75 (H.B. 155). Nevertheless, our research has not revealed any pertinent case law addressing the personal safety defense during the intervening 17 years.

The instant matter first arose in the trial judge's chambers prior to trial. N.T. at 3. Essentially, Appellant's trial counsel sought to introduce evidence,

through cross-examination of the Commonwealth's witnesses, and/or through Appellant's testimony, in order to set forth a factual basis for the personal safety defense. The trial court issued a statement about the matter at the commencement of trial, ostensibly ruling conditionally in the Commonwealth's favor. *Id.* at 3-4. Specifically, the court stated:

> It came to my attention this morning that [Appellant] intends to raise a defense to the fleeing charge.
>
> Having read the statute related to that offense, based upon the facts that I know at this point, I would not charge the jury on that defense and I would not allow the defense to raise that defense. So[,] certainly, with regard to opening arguments you may not go into that area. Only if you're able to place on the record facts to support the defense would I reconsider.
>
> I was very clear in chambers that I think there is absolutely nothing in that statute that applies to this case as I am aware of at this point in time.

*Id.* The Commonwealth also formally placed an objection to Appellant's invocation of the defense on the record at that time. *Id.* at 4.

The matter arose again just prior to Appellant's testimony, when the following discussion occurred:

> [Prosecutor]: At the beginning of the trial, it was the Court's position that it would not be an appropriate defense to be raised that there was any sort of fear on the part of this defendant as a justifiable defense for him leaving the traffic stop.
>
> While I understand there is typically great latitude afforded when the defendant chooses to testify in a trial, I believe that all of the rules of evidence would apply to the testimony, meaning it would have to be relevant.
>
> It would be my position that any testimony about the state of mind and whether or not he was in fear during the course of the traffic stop would not be relevant in any way [or] probative [as] to

whether or not he committed the offense of fleeing and eluding. And therefore, I would at this time motion *in limine* for defense counsel to not ask for defendant to not offer any testimony about state of mind and whether or not he was in fear at any point during the traffic stop.

THE COURT: **It's not relevant to a defense**. I've already made that ruling. You have not demonstrated based on the testimony on the record to this point that any of the factors contained in that defense apply to your client.

Specifically, this was not a circumstance that the police initiated a traffic stop and he is charged with not stopping because he was concerned about his safety. He did, in fact, stop.

Beyond that, the defendant would have to prove by a preponderance of the evidence that his failure to stop initially was a good faith concern for his personal safety. Even assuming that there would be case law which you have not presented to me and I have not found in my limited research. Even assuming he had met that initial showing, the second part then indicates that in considering whether or not this defense applies, we should look at time and location.

It was 10:00 a.m. It was broad daylight in a city location specifically in a parking lot. The police were in a marked vehicle and they were in uniform. The defendant's conduct, once he fled, was, in fact, to drive at a high rate of speed based on the testimony, putting other people's lives in danger in the oncoming traffic through red lights and so on.

The defendant did not then stop at the first available location where it was a populated area and he could feel safe. In fact, he was in that type of location when he fled. And there have been no other relevant factors brought out on direct testimony to indicate that he would be able to raise this defense.

So I will not permit him to testify with regard to his fleeing based on a good faith concern for his personal safety.

[Assistant Public Defender Heath Leff, hereinafter, "Defense counsel"]: If I may, I guess this would be lodging an objection to an objection. But Title 75 Pennsylvania Consolidated Statute Section 3733 (c)(2) states it is a defense to prosecution under the section if a defendant can show by a preponderance of the

evidence that the failure to stop immediately for a police officer's vehicle was based upon the good faith concern for personal safety.

In determining whether the defendant met this burden, the Court may consider the following factors: Time and location of the event. The type of police vehicle. Defendant's conduct while being followed by the police officer. Whether the defendant stopped at the first available reasonably lighted or populated area or any other factor considered relevant by the Court.

This is not subject to Your Honor's decision. This is a jury trial. It is whether the jury finds that he met this burden or not.

THE COURT: Do you have case law on that? Because in a self-defense case it is up to the defendant to demonstrate to the Court that the defense in question applies.

[Defense counsel]: How could you or any Court possibly make a ruling on this before the defendant has had an opportunity to testify?

THE COURT: Because none of the other factors apply here. You have told us in your opening statement to the jury that the only point, essential point that you would be disputing would be those 5 to 10 seconds' worth of time where your client claims that he had a legitimate good faith concern for his personal safety under the facts that were already testified to.

And all of those facts include the factors that I have just recited that you then re-recited about time and location, type of vehicle, uniformed officers, his conduct, when he fled the scene, including that he did not pull over and in a police station or other place where he would have felt safe. In fact, he was in that type of an area already.

And you have not pointed out any other relevant factor that I believe would legitimately raise this defense. And because it would be an affirmative defense, you need to place on the record something other than your client's statement that he felt threatened in that moment with his car doors locked and his window most of the way up.

[Defense counsel]: So Officer Huber testified in his examination, I think on direct and cross, that he said he felt threatened.

THE COURT: Your client said that, yes. I could tell you my hair is green.

[Defense counsel]: No. Officer Huber said my client said that.

THE COURT: Your client could say anything. He could say that he's from the planet Mars. That doesn't make it true.

[Defense counsel]: You're right.

THE COURT: It also doesn't make it meet the statutory requirement that it's a good faith concern for his safety.

[Defense counsel]: By not letting me argue this, you're essentially cutting the legs out from our only line of defense.

THE COURT: I told you that well in advance. I told you that in chambers when you raised it. I told you that before we began the trial on the record. And this should not come in any way as a surprise to you.

[Defense counsel]: Your Honor's position this morning was that you needed to see how the facts played out --

THE COURT: Again, Mr. Leff, we're done arguing this point because the facts have played out exactly as you said they would, exactly. When you stipulated to the jury in your opening that the only point in question was that five to ten seconds of time --

[Defense counsel]: Facts but not legal argument.

THE COURT: No, Mr. Leff. You've made your legal argument. I've ruled on it. Your client is able to testify but not about a defense that would involve good faith concern for his personal safety because I've made the ruling that you haven't met even the most basic criteria for that defense.

[Defense counsel]: Your Honor, the officer is trying to get him out of the car --

THE COURT: Please move on. I've made my ruling.

[Defense counsel]: I can't. How can I move on when I can't ask my client how he felt when this was going on.

THE COURT: Mr. Leff, I've told you all of this already. Your client can take the stand and testify to any other dispute he may have, but he cannot take the stand and testify with regard to his fear. His statement to that effect is already before the jury.

N.T. at 98-106 (emphasis added).

During Appellant's subsequent testimony, and without solicitation by defense counsel, Appellant stated that he "felt like these people were trying to kill me or something." *Id.* at 116. The prosecutor objected on the basis that Appellant's state of mind was irrelevant. *Id.* The court sustained the objection, and ordered the statement stricken from the record. *Id.*

Later, defense counsel specifically asked Appellant, "did you feel like it was going to turn into a violent episode?" *Id.* at 119. The prosecutor again objected on relevance grounds, and the trial court sustained the objection on that basis. *Id.* Defense counsel then asked Appellant, "Were you ever concerned about any of your interactions with the police for your personal safety?" *Id.* Again, the prosecutor objected on relevance grounds, and the trial court sustained the objection. *Id.*

Appellant contends that the trial court's actions, detailed above, deprived him "of his rights under the State and Federal Constitutions to due process, to a fair trial, to testify in his own defense[,] and to present a defense." Appellant's Brief at 20. Appellant specifically challenges the trial court's granting of the Commonwealth's oral motion *in limine* immediately prior to Appellant's testimony. He argues that the court's ruling effectively foreclosed his ability to present any evidence in support of the statutory defense set forth in Section 3733(c)(2). Additionally or alternatively, Appellant contends that his statement to Officer Huber, which was admitted through Huber's testimony during cross-examination, itself was a sufficient

factual basis with which to permit the court to issue a jury instruction based on the personal safety defense.

The Commonwealth appears to concede these issues, stating:

> The prosecutor appears to have misunderstood the court's initial ruling and then confused the trial court as to its initial ruling. The trial court made its decision concerning whether [A]ppellant had met his burden, prior to [A]ppellant['s] presenting his case. This Court might find that the grant of the motion *in limine* was an error. The trial court's decision not to charge on the defense was skewed by the limitations that were placed on [A]ppellant's ability to make an attempt to prove the defense. Under these facts, the trial court's refusal to instruct is questionable, since it was founded on an erroneous understanding of what was relevant and what evidence could be introduced to prove the defense.

Commonwealth's Brief at 2.[5]

In its opinion, the trial court largely relied on the reasoning it expressed during the course trial, as detailed, *supra*. The court then stated that a guilty verdict was upheld "under similar facts" in ***Commonwealth v. Robertson***, 2017 WL 929412 (Pa. Super. 2018) (unpublished memorandum) (filed March 8, 2017). Finally, the court stated:

> Typically, a defense based on 75 Pa.C.S. § 3733(c)[(2)], is used when the police initiate a traffic stop and a defendant is charged with not stopping because he had a reasonable concern for his safety. This scenario is not what happened with Appellant, who did initially stop for the police. Appellant did not move from an unsafe location to a safe one, he did just the opposite by crossing several lanes of a busy highway at a high rate of speed. Appellant's subjective assertion of fear is not supported by any other evidence. As this [c]ourt correctly concluded that the facts did not support a defense based on 75 Pa.C.S. § 3733(c), this

---

[5] We appreciate the Commonwealth's candor before this tribunal.

[c]ourt did not err in precluding Appellant from presenting that defense.

Trial Court Opinion, 6/6/17, at 5.

The trial court's reasoning for granting the Commonwealth's motion *in limine*, and later refusing to issue a personal safety defense instruction, is not sound. First, we reject the trial court's citation of **Robertson** for support, as it is a non-precedential memorandum decision.

> An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding because it recites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding.

210 Pa. Code § 65.37. Neither exception applies to this case. In any event, **Robertson** is inapposite; it did not cite, discuss, or otherwise make any decision premised on or applying Section 3733(c)(2). Instead, **Robertson** dealt only with a sufficiency claim based on the primary elements of the fleeing or eluding police offense. Thus, even if **Robertson** were a precedential decision, it provides no insight regarding the statutory defense at issue and, therefore, could not have provided the trial court with any basis for its decision.

Second, we consider whether Appellant's subjective belief was relevant to the personal safety defense. The trial court repeatedly ruled that it was not during the course of Appellant's trial.

- 15 -

"All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401.

Here, the pertinent fact at issue is whether Appellant's "failure to stop immediately for a police officer's vehicle was based upon a ***good faith concern*** for personal safety." 75 Pa.C.S. § 3733(c)(2) (emphasis added). The trial court concluded that Appellant's fearful state of mind was not a relevant consideration for the personal safety defense, as evidenced by its instruction to defense counsel that: "Your client is able to testify but not about a defense that would involve good faith concern for his personal safety because I've made the ruling that you haven't met even the most basic criteria for that defense." N.T. at 106. While a good faith concern may, on occasion, be established through indirect or circumstantial evidence, the most direct *and* relevant evidence of a "good faith concern" must be a statement and/or testimony by a defendant regarding his or her state of mind at the time he or she failed to stop for police. Thus, the personal safety defense requires, as a *minimum* prerequisite, a showing regarding the defendant's state of mind. Thus, the 'most basic criteria' for the personal safety defense is whether a defendant's "failure to stop immediately" is based on a "concern for personal safety." 75 Pa.C.S. § 3733(c)(2).

Whether that subjective viewpoint constitutes a "good faith" concern is a matter for the factfinder, to be judged by a "preponderance of the evidence" standard. 75 Pa.C.S. § 3733(c)(2). To determine whether a defendant can overcome that evidentiary standard, the factfinder

> *may* consider the following factors:
>
> (i) The time and location of the event.
>
> (ii) The type of police vehicle used by the police officer.
>
> (iii) The defendant's conduct while being followed by the police officer.
>
> (iv) Whether the defendant stopped at the first available reasonably lighted or populated area.
>
> (v) Any other factor considered relevant by the court.

*Id.* (emphasis added).

Here, the trial court mistakenly took these *objective* factors as the prerequisites for a *prima facie* showing of the applicability of the personal safety defense. *See* N.T. at 100 ("You have not demonstrated based on the testimony on the record to this point that any of the factors contained in that defense apply to your client." The court then went on to evaluate the five factors set forth in Section 3733(c)(2)(i)-(v) as they pertained to the facts of this case).[6] To the contrary, a *prima facie* showing for the statutory defense

---

[6] We also note that the trial court appeared, at times, to confuse when the fleeing or eluding police offense actually occurred in her discussion of relevant Section 3733(c)(2)(i)-(v) factors. The alleged crime did not occur during the stop, nor at the precise moment when Appellant fled, but soon thereafter when he refused to stop during the brief pursuit that followed. Thus, the court's

is instead established by evidence of a defendant's subjective concern for his safety. The factors set forth in Section 3733(c)(2)(i)-(v) (hereinafter, "good faith factors") only come into play when the evidence demonstrates a defendant's subjective concern for his safety; in other words, those factors are intended to be the framework in which the factfinder evaluates whether a defendant's subjective fear is held in "good faith." 75 Pa.C.S. § 3733(c)(2).

Hence, the statutory defense is not available to a defendant who lacks a subjective fear for his or her own safety, even if all the objective good faith factors resolve in his favor. For instance, a defendant who asserts the defense that he was not aware that police were trying to initiate a stop cannot simultaneously assert the personal safety defense, because a defendant's lack of knowledge of the pursuit cannot coexist with a fear of stopping in light of that pursuit.[7] Similarly, the defense is not available to a defendant who testifies that he was not afraid for his personal safety when he failed to stop for police.

The trial court's analysis appears to have judged the *weight* and/or *credibility* of Appellant's subjective concern for his own safety, in order to determine its admissibility. **See** N.T. at 104 ("Your client could say anything.

---

comment, that Appellant "was [already] in [a safe, populated area] when he fled[,]" was somewhat irrelevant, as Appellant had already departed that location when the officers gave chase and activated their lights and sirens, which is when the fleeing and eluding police offense occurred. N.T. at 101.

[7] The fleeing or eluding police statute's *mens rea* element requires proof that a defendant "**willfully** fails or refuses to bring his vehicle to a stop[.]" 75 Pa.C.S. § 3733(a) (emphasis added).

He could say that he's from the planet Mars. That doesn't make it true."). As we have explained, that is putting the proverbial cart before the horse. The legal question before the court was whether Appellant expressed a subjective concern for his own safety, and any determination regarding the reasonableness of that subjective concern was the exclusive province of the jury.

An imperfect analogy can be drawn to our decision in ***Commonwealth v. Baronner***, 471 A.2d 104 (Pa. Super. 1984). In that rape case, the defendant intended to present a consent defense. In support thereof, he sought to testify as to his prior consensual sexual relations with the victim, which is an exception to Pennsylvania's Rape Shield Law. ***See*** 18 Pa.C.S. § 3104 (prohibiting "evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct[,]" except for "evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue").

> The trial court held an in camera hearing at which [the] appellant's testimony was countered by testimony from the alleged victim that although she and appellant had dated on prior occasions, they had not previously engaged in sexual intercourse. Based on this testimony, [the] appellant's offer of proof was rejected, and he was not permitted to give trial testimony of [the victim's] prior sexual conduct with [him]. The reason given by the trial court for the evidentiary ruling was: "The matter reduces itself to a matter of credibility and this Court elects to believe [the victim]."

- 19 -

*Baronner*, 471 A.2d at 105–06. We held that the trial court erred, because "[t]he credibility of [the] appellant's consent defense … was for the jury. It was not for the trial judge to reject relevant trial testimony and keep it from the jury merely because he did not believe it." *Id.* at 106.

Likewise, here, the trial court rejected Appellant's attempt to offer evidence of his personal safety defense because, based on the attendant circumstances of his encounter with police, the court did not believe that Appellant's concern for his own safety was credible, or that it was not made in good faith. This was clear legal error. Accordingly, we conclude that the trial court abused its discretion when it granted the Commonwealth's motion *in limine* that precluded Appellant's testimony that he was concerned for his personal safety when he refused to stop.

We also conclude that, based on the admitted testimony, the trial court erred by refusing to issue the requested instruction based on the personal safety defense. Appellant's statement to police during the encounter, "I don't like your tone. I feel very threatened[,]" was memorialized in Officer Huber's police report, and introduced into evidence through Officer Huber's testimony during both direct- and cross-examination. Nevertheless, the trial court refused to issue an instruction regarding the personal safety defense. *See* N.T. at 124. The statement was itself sufficient to invoke the statutory defense, as it demonstrated Appellant's actual subjective concern for his own safety during his encounter with Officers Huber and Carr, just prior to the alleged fleeing and eluding police offense.

- 20 -

The Commonwealth argues that the statement was hearsay, which it is.[8] Commonwealth's Brief at 16. However, Officer Huber recited an incomplete version of Appellant's statement to him during direct-examination by the prosecutor. N.T. at 71. Neither party objected. Later, during cross-examination, Officer Huber acknowledged a more accurate version of the same statement. *Id.* at 80. Again, neither party objected. Thus, Appellant's statement that he felt threatened, made at the time of his encounter with police, was already part of the evidentiary record when the trial court denied Appellant's request for an instruction on the personal safety defense. Accordingly, we conclude that the trial court abused its discretion by failing to issue, per Appellant's request, a jury instruction regarding the personal safety defense. "Where a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record." *DeMarco*, 809 A.2d at 261.

In sum, we hold that the trial court deprived Appellant of his constitutional right to present a defense by refusing to allow him to testify at trial regarding his fear when he fled from police, and by denying his request for a personal safety jury instruction based on the evidence of record. Accordingly, he is entitled to a new trial. *See Commonwealth v. Lesher*, 373 A.2d 1088, 1093 (Pa. 1977) (holding that jury instruction error

---

[8] The statement was made out of court, and ostensibly admitted for the truth of the matter asserted, *i.e.*, that Appellant felt threatened. If it was not admitted for the truth of the matter asserted, then it was not hearsay.

constitutes reversible error, requiring a new trial, where correct instruction may have caused the jury to reach a different verdict).

Judgment of sentence **vacated**. Case **remanded** for a new trial. Jurisdiction **relinquished**.

Judge Shogan joins this opinion.

Judge Strassburger files a dissenting opinion.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/5/2018