J-E03004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL BARONE, JR. | : | |
| | : | |
| Appellant | : | No. 1528 WDA 2018 |

Appeal from the PCRA Order Entered October 1, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006683-2013

BEFORE: PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., OLSON, J., STABILE, J., NICHOLS, J., McLAUGHLIN, J., and KING, J.

DISSENTING MEMORANDUM BY BOWES, J.:          **FILED: APRIL 15, 2021**

Barone's jury convicted him of first-degree murder upon being instructed that a fear for the life of himself and his friends must be reasonable to justify an intentional killing, but not that an unreasonable fear could negate the element of malice and warrant a finding of voluntary manslaughter.[1] The Majority holds that the counsel's failure to ensure that the jury was informed of its ability to return a reduced verdict if Barone **unjustifiably** acted in self-defense or defense of others does not entitle Barone to relief because the jury "had already been told that Barone could not be found guilty of murder if he **justifiably** acted in self-defense or defense of others." Majority Memorandum

---

[1] **See**, **e.g.**, **Commonwealth v. Nau**, 373 A.2d 449, 452 (Pa. 1977) ("The alleged fear of the appellant (even though unreasonable) in effect may be considered for the purpose of negating the element of malice, the presence of which would otherwise make the homicide murder and not manslaughter.").

at 11 (emphasis added).  Since I fail to see the logic in the Majority's ruling, and because I further disagree with the Majority's alternative holding that the facts of the case rendered the voluntary manslaughter instruction inapplicable, I respectfully dissent.

I begin with a review of the pertinent facts.  Barone testified that he and his best friend J.J. began their evening at J.J.'s house, then went to a bar where J.J.'s girlfriend worked.  *See* N.T. Trial, 8/20/15, at 97-98.  J.J., who had recently sustained gunshot wounds that negatively impacted his mobility, was like a brother to Barone.  *Id*. at 103-04, 107, 121.  Another friend, Travon Fuller, met them at the bar and drove them to Club Pink, where they met some additional friends.  *Id*. at 98-99.  While the men enjoyed the club's amenities, a disturbance occurred upstairs, ultimately resulting in the club management turning up the lights and instructing everyone to leave.  *Id*. at 100-01.  Barone and Fuller made their way outside, but were unable to locate J.J.  *Id*. at 101.  While Barone looked around for J.J., Fuller indicated that they had to get away quickly.  *Id*. at 102.  Barone observed a group of men he did not know drawing weapons from a nearby vehicle.  *Id*. at 102-03.  Fearful for J.J.'s safety, Barone retrieved a weapon from Fuller's car and went back to find J.J.  *Id*. at 103 ("I couldn't leave J.J., like he's like my little brother, you know what I'm saying.  . . .  I'm not gonna leave him down there when all this shit's going on.").  Once J.J. was behind Barone making his way to Fuller's vehicle, the other group began shooting.  *Id*. at 106.  Barone moved towards the other group and returned their fire to cover J.J. and Fuller while they

readied the car for their hasty departure. *Id*. at 107. Fearing that none of them would be able to get to safety, Barone continued to fire at the aggressors rather than taking cover behind a dumpster or turning his back to run away. Id. at 107, 124 124 (testifying that his instinct was to protect his friends "by any means necessary" rather than run away to seek his own safety). Even once the three were in Fuller's vehicle and were attempting to get out of the alley where they parked, the other group continued firing on them, prompting Barone to fire shots from inside Fuller's car as the three men were finally able to flee. *Id*. at 107-08. In sum, Barone's defense was that the other group initiated and sustained the shooting, and that he took the steps he deemed necessary to enable his friends to escape with their lives.

The trial court, which had reserved deciding whether it would instruct the jury as to justification, ruled that Barone's testimony warranted the justification charge.[2] *See Commonwealth v. Mayfield*, 585 A.2d 1069, 1071 (Pa.Super. 1991) (*en banc*) ("If there is any evidence from whatever source that will support [the elements of self-defense] then the decision as to whether the claim is a valid one is left to the jury and the jury must be charged properly thereon by the trial court."). Consequently, the trial court instructed the jury as follows regarding murder and justification:

---

[2] After issuing its ruling and indicating that it would charge the jury as to first- and third-degree murder, the trial court asked, "Anything else?" N.T. Trial, 8/20/15, at 137. Barone's counsel said nothing about voluntary manslaughter.

- 3 -

The defendant is charged with taking the life of John Sumpter, IV, by criminal homicide. There are three possible verdicts that you might reach in this case; not guilty or guilty of one of the following crimes: Murder in the first degree or murder in the third degree. Before I define each of these crimes I will tell you about malice which is an element of the crime of murder.

A person who kills must act with malice to be guilty of any degree of murder, and the word malice as I am using it has a special legal meaning. It does not mean simply hatred, spite or ill will. Malice is a shorthand way of referring to any of three different mental states that the law regards as being bad enough to make a killing murder. The type of malice differs for each degree of murder. Thus for murder of the first degree a killing is with malice if the perpetrator acts with, first, an intent to kill or, as I will later explain in my definition of first degree murder, the killing is willful, deliberate and premeditated.

. . . .

A killing is without malice if the perpetrator acts with lawful justification or excuse; lawful justification or excuse not only negates malice but also is a complete defense to any charges of criminal homicide, and I shall say more about this when I do charge you on the defense of self-defense or justification.

The defendant is charged with murder of the first degree. First degree murder is murder in which the perpetrator has the specific intent to kill. To find the defendant guilty of this offense you must find that the following three elements have been proven beyond a reasonable doubt: First, that John Hunter Sumpter, IV is dead; second, that the defendant killed him and; third, that the defendant did so with the specific intent to kill and with malice. A person has the specific intent to kill if he has a fully formed intent to kill and is conscious of his own intentions.

As my earlier definition of malice indicates, **a killing by a person who has the specific intent to kill is a killing with malice provided that it is also without circumstances reducing the killing to a lawful justification or excuse.** Stated differently, a killing is with specific intent to kill if it is willful, deliberate and premeditated.

The specific intent to kill, including the planning needed for first degree murder does not require planning or previous thought for any particular length of time. It can occur quickly. All that is necessary is that there be time enough so that the defendant can and does fully form an intent to kill and is conscious of that intention.

When deciding whether or not – whether the defendant had the specific intent to kill you should consider all of the evidence regarding his words and conduct and attending circumstances that may show this state of mind. If you believe that the defendant intentionally used a deadly weapon on a vital part of the victim's body you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant had the specific intent to kill.

. . . .

When deciding whether the defendant acted with malice you should consider all of the evidence regarding his words and conduct and the attending circumstances that may show his state of mind. If you believe that the defendant intentionally used a deadly weapon on a vital part of John Sumpter's body you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant acted with malice.

The defendant has raised the issue of whether he acted in defense of himself or another, when his actions were to protect Mr. Scott, Mr. Fuller or himself. Such a defense is called justification in the law of the Commonwealth of Pennsylvania. If the defendant's actions were justified you cannot find him guilty beyond a reasonable doubt. The issue having been raised it is the Commonwealth's burden to prove beyond a reasonable doubt that the defendant did not act in justifiable defense of himself or another.

. . . .

If the Commonwealth proves to you beyond a reasonable doubt that the defendant used deadly force, then to prove that such force was not justifiable in this case it must prove one of the following elements beyond a reasonable doubt: First, that the defendant did not reasonably believe that he or another was in immediate danger of death or serious bodily injury from John

Sumpter or another unnamed individual or individuals at the time that the defendant used the force and that, therefore, the defendant's belief that it was necessary for him to use deadly force against John Hunter Sumpter or other unnamed individuals to protect himself or another was unreasonable. Put another way, the Commonwealth must prove either; one, that the defendant did not actually believe another person was in danger of death or serious bodily injury such that he needed to use deadly force to defend them at the moment or, two, that while the defendant actually believed he needed to use such force his belief was unreasonable in light of all of the other circumstances known to him.

Keep in mind a person is justified in using deadly force against another not only when another person is in actual danger of unlawful attack but also when the defendant mistakenly but reasonably believes that he is. A defendant is entitled to estimate the necessity for the force he employs under the circumstances as he reasonably believes them to be at the time.

In the heat of conflict a person who witnesses an attack or another ordinarily has neither -- on himself or another ordinarily has neither time nor composure to evaluate carefully the danger and make nice judgments about exactly how much force is needed to protect them. Consider the realities of the situation faced by the defendant here when you assess whether the Commonwealth has proved beyond a reasonable doubt either that he did not believe that he or another was actually in danger of death or serious bodily injury to justify his use of such force in their defense or that while he did believe that his belief was unreasonable.

The second application of justification in this case is where the defendant knew that he could avoid the necessity of using deadly force with complete safety by retreating himself, trying to cause the person he sought to protect to retreat and failing to do so. However, neither the defendant nor the person he seeks to protect is obligated to retreat from his own dwelling; that is any building or structure, though moveable or temporary or a portion thereof, including the doorway that is at least for the time being their home or place of lodging unless the defendant was the initial aggressor in the incident.

If the Commonwealth proves one of these elements beyond a reasonable doubt the actions of the defendant in using deadly

force are not justified. If the Commonwealth fails to prove these elements the defendant's action was justified and you must find him not guilty of the crime of criminal homicide.

N.T. Trial, 8/20/15, at 175-84 (emphasis added). Applying this law to the evidence at trial, the jury returned a guilty verdict as to the charge of murder in the first degree.

As its primary basis for its holding that counsel's failure to request a voluntary manslaughter charge did not render him ineffective, the Majority in essence concludes that the trial court erred in even giving a self-defense instruction in the first place. The Majority indicates that "[t]he evidence presented at trial plainly established that Barone was not free from fault in **continuing** the difficulty that led to Sumpter's death, and that Barone chose not to retreat from the parking lot, despite being able to do so safely with his two companions[.]" Majority Memorandum at 7-8 (citation omitted, emphasis in original). Noting that imperfect self-defense requires satisfaction of all elements of self-defense except the reasonableness of the belief that deadly force was necessary, the Majority states that Barone was unable to do so because he failed to take cover behind a dumpster or a car when the shooting began, and he walked towards, rather than away from, the threat while his companions retreated. Thus, holds the Majority, Barone's PCRA claim of ineffectiveness lacks arguable merit.[3] *Id*. at 8.

_____

[3] The Majority indicates that its conclusion that the evidence did not support the voluntary manslaughter instruction also renders Barone incapable of satisfying the second prong of an ineffectiveness claim regarding reasonable

Unlike the Majority, I believe that the trial court properly determined that Barone's testimony entitled him to a justification instruction. The law dictates that the failure to exercise a duty to retreat defeats justification only if "the retreat was possible with **complete** safety." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1143 (Pa.Super. 2009) (emphasis added). Similarly, a disqualifying continuation of the difficulties occurs not when the defendant is still responding to the ongoing violence posed by the aggressor, but when the defendant uses deadly force after the initial deadly threat has completely ceased. ***See***, ***e.g.***, ***Commonwealth v. Serge***, 837 A.2d 1255, 1266 (Pa.Super. 2003), *aff'd on other grounds*, 896 A.2d 1170 (Pa. 2006) (holding evidence was insufficient to support imperfect self-defense instruction where the defendant "failed to offer requisite evidence challenging the inference that [he] 'continued the difficulty which resulted in the killing'

---

basis. ***See*** Majority Memorandum at 8. Yet, the record before us gives no indication that it was a belief that the instruction was inappropriate that motivated counsel's omission. Indeed, the fact that counsel repeatedly advocated for the justification instruction tends to belie the Majority's assumption that counsel's inaction was based upon an unfavorable assessment of the evidence, and instead suggests that it was the result of counsel's neglect. However, because the PCRA court declined to hold a hearing, we do not know why counsel failed to request that the jury be charged as to voluntary manslaughter. The law is clear that it is improper to conclude that counsel's omission lacked a reasonable basis without an evidentiary foundation. ***See Commonwealth v. Hanible***, 30 A.3d 426, 442 (Pa. 2011) ("[G]enerally, the court should not glean from the record whether counsel had a reasonable basis for his action or inaction absent an evidentiary hearing, and that it is only in the most clear-cut cases that the reasons for counsel's conduct are apparent from the record."). Therefore, as indicated *infra*, I would remand for a hearing on that issue.

when he fired the fatal shot into a kneeling, wounded, and non-threatening [victim]").

Barone testified that the threat continued after J.J. and Fuller were behind him, and that the other group continued shooting at them until they escaped the scene. Since the shooters did not cease their fire or withdraw from the scene, the jury need not have concluded that Barone's immediate running to the car or ducking behind a dumpster would have rendered him and his comrades **completely** safe from the ongoing deadly threat. Nor must the jury have concluded that Barone and his friends were safe once they were in Fuller's car and attempting to leave the scene, as there was no suggestion that Travon's car was bulletproof. Indeed, the decedent himself was inside a car when struck by Barone's bullet.

Thus, I believe the Majority errs in ruling that the evidence **required** a finding that Barone was not free from fault and could have retreated with complete safety. *Cf. Commonwealth v. Isaacman*, 409 A.2d 880, 881 (Pa. 1979) (affirming voluntary manslaughter conviction where defendant shot retreating victim in the back upon concluding that, "[e]ven if [defendant] believed that [victim] would return and do him further harm, he was under a duty to retreat, and, once the deceased had left the scene, this could have been done with complete safety"). Where, as here, the evidence could support a defense to the charges at issue, the defendant is entitled to the relevant jury instructions, and the credibility and import of the evidence is exclusively for the fact-finder to decide. *See*, *e.g.*, *Commonwealth v. Markman*, 916

A.2d 586, 607 (Pa. 2007) ("[W]here a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record; it is for the trier of fact to pass upon that evidence and improper for the trial judge to exclude such consideration by refusing the charge." (cleaned up)). **Accord Commonwealth v. Roxberry**, 602 A.2d 826, 828 (Pa. 1992) (holding counsel was ineffective in failing to object to the absence of an alibi jury instruction upon rejecting the Commonwealth's argument that the defendant's alibi testimony was not corroborated, stating "[b]ecause credibility is indisputably the exclusive province of the jury, we cannot properly permit a judge, under the guise of exercising discretion, to remove the alibi issue from the jury merely because the judge finds the evidence incredible"); **Commonwealth v. Weber**, 189 A.3d 1016, 1026 (Pa.Super. 2018) (holding that trial court erred in not instructing the jury as to the personal safety defense to justify the defendant's failure to obey a police instruction to stop his vehicle; once the defendant invoked the defense by expressing a subjective concern for his own safety, "any determination regarding the reasonableness of that subjective concern was the exclusive province of the jury").

The Majority alternatively holds that Barone was not prejudiced by counsel's failure to request a voluntary manslaughter instruction because the fact that the jury convicted Barone of first-degree murder establishes that it would not have reached a different result were the omitted charge given. The

Majority maintains that the outcome of the trial would have been the same even if the jury was informed that it could convict Barone of involuntary manslaughter since it "clearly determined that Barone acted with malice in an unjustified manner in using deadly force[.]" Majority Memorandum at 11. I disagree.

"[A] killing is excused in the name of self-defense only if the slayer reasonably feared for his life. An unreasonable belief that one's life is in jeopardy will not excuse a killing, but it will reduce the degree to voluntary manslaughter." *Commonwealth v. McNeil*, 439 A.2d 664, 669 (Pa. 1981) (cleaned up). Barone's jury was told the first of those principles: "a killing by a person who has the specific intent to kill is a killing with malice provided that it is also without circumstances reducing the killing to a lawful justification or excuse." N.T. Trial, 8/20/15, at 178. However, it was not told that "where a defendant acts under an unreasonable fear that he is in danger of serious bodily harm, there may be a direct and specific intent to kill, and yet the offense may constitute voluntary manslaughter." *Commonwealth v. Nau*, 373 A.2d 449, 452 (Pa. 1977) (cleaned up).

Without the benefit of a voluntary manslaughter instruction, the jury was left to believe that, if Barone fired his weapon with the specific intent to kill, the only basis for not finding him guilty of first-degree murder was if he reasonably acted in self-defense or defense of others. I acknowledge that it is entirely possible that the jury's verdict was based upon a conclusion that

Barone was the aggressor, that he had a duty to retreat but failed to do so, or that he did not actually fear for the safety of anyone in his group.

However, it is also completely plausible, and consistent with the instructions that the jury received, that its verdict was based upon the determination that Barone fired his weapon with the specific intent to kill and the unreasonable belief that doing so was necessary to defend himself or his companions. *Accord Commonwealth v. Monroe*, 322 A.2d 100, 101 (Pa. 1974) (holding, where the defendant had argued with an armed man in a bar for insulting his sister, and subsequently fired a gun at the armed man's brother-in-law as soon as he and two other men approached the defendant threateningly, that the defendant would be guilty of voluntary manslaughter, not murder, if his hasty use of deadly force was actually motivated by a fear that his life was in danger, even if the fear was unreasonable).

To me, this possibility that the jury could have convicted Barone of first-degree murder because it was unaware that imperfect self-defense negated the malice element of the crime, sufficiently erodes confidence in the outcome of the proceedings to establish prejudice. *See*, *e.g.*, *Commonwealth v. Little*, ___ A.3d ___, 2021 PA Super 7 (Pa.Super. January 15, 2021) (reiterating that the prejudice standard—"a degree of likelihood sufficient to undermine confidence in the outcome of the proceedings"—"is not a stringent one, as it is less demanding than the preponderance standard" (cleaned up)).

For the above reasons, I would hold that Barone has established that his claim that counsel was ineffective in failing to request an imperfect-self-

defense voluntary manslaughter charge has arguable merit, and that he was prejudiced by the omission. Rather than affirm the order dismissing Barone's PCRA petition, I would remand for a hearing on the question of whether counsel had a reasonable basis for failing to request the instruction. *See Commonwealth v. Hanible*, 30 A.3d 426, 442 (Pa. 2011) (providing that where a PCRA petitioner raises allegations of counsel's lack of a reasonable basis, the issue generally should be determined following an evidentiary hearing).[4] Accordingly, I respectfully dissent.

---

[4] Barone alleged that counsel's failure to request the justification charge was not a reasoned trial strategy, but the result of substance abuse issues that affected counsel during trial.

- 13 -