J-A15041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRANCE RYAN | : | |
| | : | |
| Appellant | : | No. 961 WDA 2021 |

Appeal from the Judgment of Sentence Entered April 6, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0009084-2020

BEFORE:  BOWES, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED: JULY 25, 2022**

Terrance Ryan ("Ryan") appeals from the judgment of sentence imposed following his convictions for fleeing or attempting to elude police officer ("fleeing and eluding"), escape, and various summary traffic violations.[1]  We affirm.

The trial court summarized the relevant factual history as follows:

At trial, the Commonwealth presented one (1) witness, Pennsylvania State Trooper Stephen Zoller.  Trooper Zoller testified [that,] at approximately 8:01 p.m. on November 5, 2020[,] he was in a marked patrol vehicle and dressed in full uniform while in East Pittsburgh Borough.  He observed a silver Ford Fusion on Main Street make two (2) turns without signaling.  After a few blocks, Trooper Zoller conducted a traffic stop by activating his lights and [Ryan] immediately stopped his vehicle.  During the approach of the trooper, [Ryan] extended his arm out the driver's side window with what appeared to be an identification card.  Trooper Zoller found this to be "odd" in that he had not made this request of the driver.  Noting that most people are

---

[1] **See** 75 Pa.C.S.A. §§ 3733, 3323, 3334, 3714; 18 Pa.C.S.A. § 5121.

nervous when pulled over by police, Trooper Zoller testified that [Ryan's] behavior was abnormal in that his nervousness did not subside upon being told he may just receive a warning. While standing at the passenger side of the vehicle, Trooper Zoller could see that [Ryan's] eyes were darting in several directions and found [Ryan's] speech to be calm but erratic. When asked where he was coming from, [Ryan] informed Trooper Zoller that he had just completed a jitney trip and was heading home to Homestead. When asked about his criminal history, [Ryan] informed the trooper that he had a conviction for third[-]degree murder. [Ryan] refused multiple requests to turn off his vehicle. The trooper had possession of [Ryan's] identification card and was awaiting information from dispatch as to the validity of [his] information when [he] put the car in gear and drove off. At this time[,] Trooper Zoller observed [Ryan] drive at an unsafe speed, fail to stop at a sign and make a turn without signaling. He lost sight of [Ryan's] vehicle while in pursuit and then a decision was made to terminate the pursuit. The entire interaction lasted approximately twelve (12) minutes and was captured on patrol dash cam.

The following exchange occurred during the traffic stop as evidenced in [the dash cam video]:

Trooper Zoller: As long as your license is good and nothing else is going on, I'll cut you a warning. (2 minutes 11 seconds)

[Ryan]: You got me nervous as shit. (4 minutes 34 seconds)

Trooper Zoller: Let me tell you something sir. Take a deep breath for me. Okay? You're giving me some vibes. Just relax. I'm going to talk with you outside. Put your hands on the wheel. You might as well put that cigarette out. You're not in any trouble. Just put your hands on the wheel. I'm going to have you step out, Okay? You don't have any weapons on you, right? (6 minutes 30 seconds)

[Ryan]: No[.] (6 minutes 49 seconds)

Trooper Zoller: Just want to make sure you are not wanted or anything like that. (7 minutes 22 seconds)

>       Trooper Zoller: Shut the car off for me.  (8 minutes and 23 seconds)
>
>       It is after Trooper Zoller requests [Ryan] to turn off his vehicle that he drives away from the traffic stop.  It was later determined that [Ryan's] driver's license, insurance, and car registration were valid and he did not have any warrants.  Trooper Zoller called [Ryan] the following day and asked him to come to the barracks, and [Ryan] complied with this request.

Trial Court Opinion, 10/25/21, at 3-5 (footnotes and unnecessary capitalization omitted).

Trooper Zoller arrested Ryan at the barracks and charged him with fleeing and eluding, escape, and various summary traffic violations.  The matter proceeded to a non-jury trial at the conclusion of which the trial court found Ryan guilty on all counts.  On April 6, 2021, the trial court sentenced Ryan to six months of probation for fleeing and eluding and six consecutive months of probation for escape.  Ryan filed a timely post-sentence motion which the trial court denied.  Ryan filed a timely notice of appeal and both he and the trial court complied with Pa.R.A.P. 1925.

Ryan raises the following issue for our review:

> Was the evidence presented at trial sufficient to support the conviction for fleeing [and] eluding an officer when [Ryan] had a good faith concern for his own personal safety during the stop which caused him to leave the presence of the officers, leaving his driver's license and other papers behind?

Ryan's Brief at 7.

In reviewing Ryan's sufficiency challenge, the following standard and scope of review apply to our analysis:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citations internal quotations omitted).

The crime of fleeing and eluding is defined as follows:

Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).

75 Pa.C.S.A. § 3733(a).

Section 3733(c)(2) provides a defense to fleeing and eluding under the following circumstance:

It is a defense to prosecution under this section if the defendant can show by a preponderance of evidence that the failure to stop immediately for a police officer's vehicle was based upon a good faith concern for personal safety. In determining whether the defendant has met this burden, the court may consider the following factors:

(i) The time and location of the event.

(ii) The type of police vehicle used by the police officer.

- 4 -

(iii) The defendant's conduct while being followed by the police officer.

(iv) Whether the defendant stopped at the first available reasonable lighted or populated area.

(v) Any other factor considered relevant by the court.

75 Pa.C.S.A. § 3733(c)(2).[2]

A *prima facie* showing for the statutory defense is established by evidence of a defendant's subjective concern for his safety. **See Commonwealth v. Weber**, 189 A.3d 1016, 1026 (Pa. Super. 2018). The factors set forth in section 3733(c)(2)(i)-(v) (hereinafter the "good faith factors") only come into play when the evidence demonstrates a defendant's subjective concern for his safety. **Id**. In other words, if the defendant presents evidence of a subjective fear for his or her safety, the good faith factors are intended to be the framework in which the fact-finder evaluates whether the defendant's subjective fear is held in "good faith." **Id**. (citing 75 Pa.C.S.A. § 3733(c)(2)).

Ryan argues that he established a subjective fear for his personal safety. Ryan points to his testimony that a few months before this incident, he was thrown to the ground at gunpoint, handcuffed, and detained for several hours

---

[2] Section 3733(c)(1) provides an additional defense to fleeing and eluding where "the pursuing police officer's vehicle was not clearly identifiable by its markings or, if unmarked, was not occupied by a police officer who was in uniform and displaying a badge or other sign of authority." 75 Pa.C.S.A. § 3733(c)(1).

by FBI and other law enforcement officers in a case of mistaken identity. *See* Ryan's Brief at 32.[3] Ryan claims that "[t]he freshness of this incident surely weighed on [his] mind that night" and he "could not know that it would not happen again." *Id*. Ryan further argues that his history with police from his previous conviction "would make anyone wary of interacting with law enforcement." *Id*. at 32-33.

Addressing the good faith factors, Ryan argues that an officer in uniform operating a marked vehicle does not eliminate an individual's fear for their personal safety, especially one that has suffered abuse from law enforcement in the past. *Id*. at 32. Ryan asserts that he became fearful, not because of the stop's location, but rather because the trooper's demeanor changed and the interaction became increasingly hostile. *Id*. at 33. Ryan further argues that "the officer's actions could seem menacing to someone with [his] history, even if the trial judge would not feel the same way." *Id*. at 34. Ryan contends his conduct following the stop—abandoning his vehicle and spending the evening in a hotel—is not indicative as to how he felt during the stop. *Id*. Instead, Ryan claims that his actions after the incident make sense for an individual with a criminal history who could "become overwhelmed in the heat of the situation and need to fall back and regroup." *Id*.

---

[3] We observe with disapproval that Ryan failed to refer to the place in the record where such testimony appears. *See* Pa.R.A.P. 2119(c). However, this omission does not impact our analysis.

The trial court considered Ryan's issue and determined that it lacked merit. The court reasoned as follows:

> A plain reading of the statute makes it clear that [section] 3733(c)(2) is not applicable to the present facts. As evidenced by the dash [cam] video, and by defense counsel during closing arguments, [Ryan] immediately stopped his vehicle after Trooper Zoller initiated a stop. Thus, at the time [Ryan] fled, for what he claims was a fear for his safety, he had been subject to the traffic stop for approximately ten (10) minutes. Consequently, the facts supporting the charge of fleeing and eluding began when [Ryan] left the lawful traffic stop. [Section] 3733(c)(2) is available when "the defendant can show by a preponderance of the evidence that the _failure to stop immediately_ for a police officer's vehicle was based upon a good faith concern for personal safety." Accordingly, [Ryan's] claim that the court erred by failing to acquit him for leaving the traffic stop based on the statutory defense fails, as this statutory defense was simply not available to him as he had already complied by stopping his vehicle.

Trial Court Opinion, 10/25/21, at 6-7.

Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude that the evidence was sufficient to support Ryan's conviction for fleeing and eluding. Trooper Zoller initiated a lawful traffic stop after observing Ryan make two traffic violations. During the stop, Trooper Zoller advised Ryan that he wanted to make sure there was no active warrant for his arrest and instructed him to turn off his vehicle. Ryan ignored Trooper Zoller's request and sped away from the traffic stop, requiring Trooper Zoller to then pursue Ryan. Thus, the evidence established that Ryan fled or attempted to elude Trooper Zoller in violation of section 3733(a).

To invoke the defense provided by section 3733(c)(2), a defendant must "show by a preponderance of evidence that ***the failure to stop immediately*** for a police officer's vehicle was based upon a good faith concern for personal safety." 75 Pa.C.S.A. § 3733(c)(2) (emphasis added). The plain language of the statute dictates that the defense is only available where the defendant did not stop immediately for the officer. ***See Commonwealth v. Wise***, 171 A.3d 784, 788 (Pa. Super. 2017) (holding that "when ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning").[4] Here, Ryan pulled over to the side of the road as soon as Trooper Zoller initiated the traffic stop. Thus, as the trial court determined, the defense provided by section 3733(c)(2) is inapplicable.[5]

_____

[4] Notably, section 3733(a) broadly imposes liability for failing or refusing to stop or for fleeing or attempting to elude an officer. However, the defense provided by section 3733(c)(2) is narrower in scope, and applies solely to the circumstance of failing to immediately stop. Had the legislature intended the defense to apply to situations where, as here, the defendant immediately stopped but then sped away after an appreciable amount of time, it could have done so. ***See Commonwealth v. Morris***, 958 A.2d 569, 579 (Pa. Super. 2008) (explaining that "[a] presumption . . . exists that the legislature placed every word, sentence and provision in the statute for some purpose and therefore courts must give effect to every word").

[5] We are mindful that ***Weber*** involved facts similar to those presented in the instant case; namely, that the defendant initially brought his vehicle to a stop and cooperated with officers for a period of time before speeding away, prompting police pursuit. ***See Weber***, 189 A.3d at 1018-19. However, the ***Weber*** Court did not reach the question of whether section 3733(c)(2) applied, but instead determined that the trial court violated Weber's constitutional rights by granting the Commonwealth's motion *in limine* to preclude Weber from testifying at trial that he was concerned for his personal
*(Footnote Continued Next Page)*

For these reasons, we conclude that the evidence was sufficient to support Ryan's fleeing and eluding conviction, and the defense provided by section 3733(c)(2) is inapplicable.[6]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/2022

---

safety, and by refusing his request for a personal safety jury instruction. *See id*. at 1027-28. As the *Weber* Court never reached the question of whether the plain language of section 3733(c)(2) permits application of the defense under circumstances other than when the defendant fails to stop immediately, we conclude that *Weber* is not controlling in this matter.

[6] Even if the defense provided by section 3733(c)(2) were available to Ryan, his arguments regarding the good faith factors present a challenge to the weight rather than the sufficiency of the evidence. *See Commonwealth v. Bowen*, 55 A.3d 1254, 1262 (Pa. Super. 2012) (concluding that the appellant's contention that the jury's determination not to accept his explanation of the events, and therefore his affirmative defense under section 3733(c)(2), was a credibility determination that implicated the weight, not the sufficiency of the evidence).